Sidney L. RASKIN, Executor *of the Estate* of Margaret Curry, deceased, Plaintiff-Appellant,

v.

P. D. MARCHESSINI, INC., P. D. Marchessini & Co., Ltd., (also operating as P. D. Marchessini & Co., New York, Inc.), Defendants and Third-Party Plaintiffs-Appellees,

v.

ATLANTIC STEVEDORING CO., Inc., Third-Party Defendant-Appellee,

and

Liberty Mutual Insurance Company, Applicant for Intervenor.

No. 460, Docket 31718.

United States Court of Appeals, Second Circuit.

Argued Jan. 11, 1971.

Decided Feb. 26, 1971.

Jacob Rassner, New York City, for plaintiff-appellant.

Alvin L. Stern, New York City (Poles, Tublin, Patestides & Stratakis, New York City, on the brief), for defendants and third-party plaintiffs-appellees.

John Nielsen, Fogarty & Nielsen, New York City, for third-party defendant-appellee.

Before LUMBARD, Chief Judge, MEDINA and WATERMAN, Circuit Judges.

MEDINA, Circuit Judge:

On October 30, 1961 William Curry, a longshoreman engaged in the loading operation of the S.S. Eurylochus in the territorial waters of the State of Georgia, died as a result of injuries allegedly received when a broken band on a piece of cargo caught in his trousers, lifted him into the air and swung his body against the side of the vessel. On March 3, 1964 this action was brought against the shipowner by "Margaret Curry, as Administratrix of the Estate of William Curry, deceased, and Individually as the Widow and Next of Kin of William Curry, deceased." Jurisdiction was based on diversity. After a number of procedural maneuvers, the amended

complaint was dismissed by Judge McLean on June 8, 1967, pursuant to a motion for judgment on the pleadings, D. C., 274 F.Supp. 167. As the claim for relief was based on the Georgia Wrongful Death Statute, Ga.Code Ann. Sections 105–1302, 105–1309 (1956), relief was barred by the expiration before commencement of the action of the two-year period of limitations provided by Georgia law. Ga.Code Ann. Section 3–1004 (1956). The claim for damages caused by a breach of the warranty of seaworthiness, alleged in a separate paragraph of the amended complaint, was of no avail as the Supreme Court had ruled in The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886), that the maritime law afforded no relief for wrongful death, and this ruling had withstood the criticisms of a generation and more. So Judge McLean's dismissal of the amended complaint was affirmed by us on January 16, 1969. The reasons for this unusual delay have not been disclosed but it seems not unlikely that plaintiff's counsel was watching the progress of another case involving the question of recovery for wrongful death under the maritime law, and he cannot be blamed for dragging his feet. In any event, after many more months had elapsed, plaintiff's application to the Supreme Court for a writ of certiorari in this very case was pending on June 15, 1970 when Mr. Justice Harlan delivered his famous and widely praised opinion in Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), overruling The Harrisburg and holding that the maritime law did provide a remedy for wrongful death in territorial waters caused by an alleged breach of the shipowner's warranty of seaworthiness. Accordingly, the Supreme Court, on June 29, 1970, granted the writ of certiorari, vacated our judgment of affirmance of Judge McLean's dismissal of the amended complaint and remanded this case to us "for reconsideration in the light of Moragne v. States Marine Lines, Inc." 399 U.S. 519, 90 S. Ct. 2229, 26 L.Ed.2d 774. We have heard new oral arguments of counsel and have examined the new briefs filed before the oral arguments and also supplemental briefs which we ordered filed because several features of the case were confused and unclear.

In view of the stipulation by plaintiff's counsel at the time of the oral argument to the effect that he was relying solely on the claim against the shipowner for damages suffered by reason of the death of William Curry caused by a breach of the warranty of seaworthiness of the vessel, we see no occasion for further amendment of the complaint. The shipowner's contention that the jurisdictional allegation of diversity and the reliance on the Georgia Wrongful Death Statute preclude any recovery for breach of the warranty of seaworthiness borders on the frivolous, in the face of the following allegation:

Thirteenth: That the aforesaid occurrence was due to the unseaworthiness of the personnel, gear and cargo aforementioned. The personnel were unseaworthy in that they did not measure up to the standard of stevedores and longshoremen in that they did not check the hoisting gear and did not check the condition of the bands on the rolls of paper and did not discover that some of the bands were broken, and proceeded to hoist the paper which was in a dangerous and unsafe condition, thereby unduly endangering the lives and safety of the men at and about the roll of paper which was being hoisted.

The cargo in question was unseaworthy and dangerous in that the bands, particularly the one about the roll of paper in question was broken in such a manner as to create an unsafe place to work for anybody in the vicinity of said roll of paper with its broken band.

The vessel was unseaworthy in that the hoisting gear was not reasonably safe for loading the cargo in question, and the defendants were otherwise guilty of breach of warranty of seaworthiness.

This allegation was sufficient to satisfy the liberal requirements of F.R.Civ.P. 8(a) (2). It was fair notice to the shipowner that plaintiff would, if she could, assert an alternative claim, under the maritime law, based on an alleged breach of the warranty of seaworthiness. Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); and 2A Moore's Federal Practice ¶8.13 (2d Ed. 1968). It was not necessary to use the words "under the maritime law" or to assert jurisdiction in admiralty. The other parties may serve and file new pleadings addressed to the claim of unseaworthiness, if they are so advised, within a time to be fixed by the District Court.

The controversy over the substitution of another party plaintiff for Margaret Curry, the widow, who died on September 3, 1968, must be settled by the District Court on the remand that we are about to order. In *Moragne* one of the questions specifically reserved for future decision is "the beneficiaries who are entitled to recover" for wrongful death under the newly defined general maritime law (398 U.S. at 406, 90 S.Ct. 1772). It may not be necessary to decide the question in this case, however, if, as plaintiff claims, the widow, whose executor has been substituted in her place, was the sole surviving next of kin of the deceased longshoreman William Curry. Nevertheless, the shipowner claims that the proper person to prosecute the claim is the "representative" of the deceased longshoreman, not the executor of his widow, and that it was necessary, after demand, that the new and proper party be substituted within 90 days. The record is ambiguous. Some of the documents, including the amended complaint, indicate that a daughter survived William Curry. Plaintiff's counsel, on the other hand, refers to an affidavit of Ronald H. Cohen, sworn to on September 29, 1969, who describes himself as the attorney for the estate of Margaret Curry, and states:

3. That William Curry and His wife Margaret Curry died without leaving any chil[d]ren or des[c]endants of children. This he determined as a result of his investigation.

Thus on the remand, and after a hearing, the District Court will decide this controverted issue of fact and apply the proper rule under the general maritime law, taking into consideration the comments in *Moragne* on the subject. If it appears that some mistake has been made, the proper person should be qualified and substituted in place of Sidney L. Raskin, Executor of the Estate of Margaret Curry, deceased, despite the lapse of the 90-day period provided in F.R.Civ.P. 25(a) (1).

Another subject specifically reserved in *Moragne* is the application in this case of the rule of laches. In *Moragne* it was said, 398 U.S. at 406, 90 S.Ct. at 1790:

Respondents argue, for example, that a statute of limitations must be devised or "borrowed" for the new wrongful-death claim. However, petitioner and the United States respond that since we have simply removed the barrier to general maritime actions for fatal injuries, there is no reason —in federal admiralty suits at least —that such actions should not share the doctrine of laches immemorially applied to admiralty claims. In applying that doctrine, the argument runs, the courts should give consideration to the two-year statute of limitations in the Death on the High Seas Act, just as they have always looked for analogy to appropriate state or foreign statutes of limitations. See Kenney v. Trinidad Corp., 349 F.2d 832, 840 (C. A.5th Cir. 1965); Gilmore & Black, *supra* at 296 n. 149, 628. We need not decide this question now, because the present case was brought within a few months of the accident and no question of timeliness has been raised. The argument demonstrates, however, that the difficulties should be slight in applying accepted maritime law to actions for wrongful death. (Footnotes omitted.)

The delay at issue here, of course, concerns only the period between decedent's death on October 30, 1961 and March 3, 1964, when the original complaint was filed. In this interval the widow commenced a proceeding against the decedent's employer pursuant to the provisions of the Longshoremen's and Harbor Workers' Compensation Act. 33 U.S.C. Sections 901–950 (1964). This resulted, on May 2, 1962, in an award to the widow as claimant. The employer challenged the validity of the award in the United States District Court for the Southern District of Georgia, and the award was vacated on August 13, 1963. Atlantic Stevedoring Co. v. O'Keeffe, 220 F.Supp. 881 (S.D.Ga.1963). On appeal to the Fifth Circuit the award was reinstated on December 8, 1965. O'Keeffe v. Atlantic Stevedoring Co., 354 F.2d 48 (5th Cir. 1965). In addition, plaintiff's counsel asserts other excuses for the delay which involve mixed questions of law and fact. These factual matters must be decided and an appraisal made of their effect, if any, on the application of the rule of laches in this case, in the light of the comments in *Moragne*. See Gardner v. Panama R. R., 342 U.S. 29, 72 S.Ct. 12, 96 L.Ed. 31 (1951).

It may well be that the District Court will decide to "give consideration" to the two-year statute of limitations in the Death on the High Seas Act, 46 U.S.C. Section 763 (1964), as intimated in *Moragne*, 398 U.S. at 406, 90 S.Ct. 1772, 26 L.Ed.2d 339. If so, in the absence of some countervailing finding of evidence, made as a result of the winnowing process on the remand, justifying the delay in bringing the suit and any possible prejudice to the shipowner, the District Court will dismiss the case. On the other hand, plaintiff's counsel claims that "consideration" should be given to the six-year statute of limitations of New York, provided in CPLR Section 213 (McKinney Supp.1970), for actions in contract, as the claim asserted here is based on an alleged breach of the shipowner's warranty of seaworthiness.

This opens up a whole vista of new controversy, a Pandora's box that seems remote from anything anticipated by the Supreme Court when it decided *Moragne*.

We have outlined in some detail the procedure to be followed at the hearing on the remand in order to cut through the accumulated morass and allow dismissal of the case if it was brought too late or, if not, a decision on the merits.

Remanded to the District Court for the Southern District of New York with directions.