Mrs. Catherine **SPILLER**, a Widow, as Administratrix of the Estate of **L. Roy Spiller**, Deceased, and as Next Friend of **Jeffrey Spiller**, a Minor, et al., Appellees,

v.

**THOMAS M. LOWE, JR., AND ASSOCIATES, INC.,** Appellant.

No. 71–1575.

United States Court of Appeals, Eighth Circuit.

Submitted April 12, 1972.

Decided Sept. 14, 1972.

---

Damon Young, Texarkana, Ark., for appellant.

Richard S. Arnold, Texarkana, Ark., for appellees.

Before Mr. Justice CLARK,* VOGEL and LAY, Circuit Judges.

LAY, Circuit Judge.

The basic questions presented by this appeal are (1) who are the beneficiaries of the newly created federal admiralty right of action for wrongful death and (2) does the right of action for pain and suffering survive the decedent. The district court, the Honorable Paul X Williams sitting in the Western District of Arkansas, Texarkana Division, adopted the state law of Arkansas as the proper schedule of beneficiaries in entering judgments totalling $455,000.[1] 328 F. Supp. 54 (1971). The suit was brought in admiralty and was based on negligence and on the unseaworthiness of the boat in which the decedents were riding. The decedents, L. Roy Spiller, James Louis Dollarhide, John Winston Smith and William Martin Davis, were all drowned when the boat of their employer, Thomas M. Lowe, Jr. and Associates, Inc., capsized and sank on the Red River within the state boundaries of Arkansas. The trial court held that the Red River was an inland navigable stream and that the "vessel" was unseaworthy. The

* The Honorable Tom C. Clark, Associate Justice of the United States Supreme Court, Retired, sitting by special designation.

1. The defendant has paid into court $250,-000 in partial satisfaction of the judgments. The only awards disputed here are those granted to the estates of the four decedents, to the parents of the decedents, and to the step-daughter of one of the decedents.

court found no evidence of gross negligence. There is no dispute as to these findings.

█ The action was brought by the personal representatives of the respective estates and by the surviving wives, children and parents of the decedents. The trial court entered judgments of $15,000 for each of the estates as compensation for the mental anguish of the decedents incurred before their actual deaths. The court likewise entered judgments in favor of the various beneficiaries including, inter alia, the surviving parents of each of the decedents and Antionette Dollarhide, a step-child of the decedent Dollarhide. In doing so the trial court relied on Arkansas law § 27–906 et seq. which entitles the surviving parents and "persons to whom the deceased stood in loco parentis" to recover damages for the wrongful death of a decedent. We affirm the judgment in the district court but for different reasons.

The defendant urges that the district court erred in applying state law since the wrongful death actions are now derived from federal law. Defendant claims the challenged recovery should be denied because no survival statute exists under the Death on the High Seas Act (46 U.S.C.A. §§ 761–768), and applicable federal guidelines in the Jones Act (46 U.S.C.A. § 688) would prevent recovery by the parents and the step-child. Alternatively, the defendant argues that if state law is applicable we should turn to the law of Texas, where the decedent Dollarhide was domiciled, and bar his step-child from any recovery.

The newly founded federal admiralty right of action for wrongful death was first recognized in Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S. Ct. 1772, 26 L.Ed.2d 339 (1970), overruling The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886). In *Moragne* the government urged that the schedule of beneficiaries under the general maritime law should conform to the Death on the High Seas Act.[2] This argument was based primarily on the necessity for uniformity in processing admiralty law. The government believed that borrowing from the law of the relevant "coastal" states would not fully effectuate Congress' preference of beneficiaries.

Justice Harlan, writing the opinion in *Moragne*, responded:

"We do not determine this issue now, for we think its final resolution should await further sifting through the lower courts in future litigation. For present purposes we conclude only that its existence affords no sufficient reason for not coming to grips with *The Harrisburg*. If still other subsidiary issues should require resolution, such as particular questions of the measure of damages, the courts will not be without persuasive analogy for guidance. Both the Death on the High Seas Act and the numerous state wrongful-death acts have been implemented with success for decades. The experience thus built up counsels that a suit for wrongful death raises no problems unlike those that have long been grist for the judicial mill." 398 U.S. at 408, 90 S.Ct. at 1792.

2. 46 U.S.C. § 761:
"Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league [three miles] from the shore of any State, or the District of Columbia, or the Territories or dependencies of the United States, the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued."
46 U.S.C. § 767:
"The provisions of any State statute giving or regulating rights of action or remedies for death shall not be affected by this chapter. Nor shall this chapter apply to the Great Lakes or to any waters within the territorial limits of any State, or to any navigable waters in the Panama Canal Zone."

The few post-*Moragne* cases which have arisen in the past two years have generally favored the government's position in *Moragne*. In Guilbeau v. Calzada, 240 So.2d 104 (La.App.1970), it was decided that the beneficiaries enumerated in the Death on the High Seas Act should recover:

> "Uniformity has always been of paramount importance in admiralty matters. Borrowing the schedule of beneficiaries provided in the Death on the High Seas Act for wrongful death actions under general maritime law will in our opinion more nearly accomplish this objective. We, therefore, conclude that it should be applied in this instance." 240 So.2d at 110.

A similar view seems to have been adopted by the District Court for the Eastern District of Michigan which, although not facing a question of beneficiaries, made the broad statement: "The death case . . . is governed by references to, but not by, the Death on the High Seas Act." Smith v. Olsen & Ugelstad, 324 F.Supp. 578, 582 (E.D.Mich. 1971).

The Eastern District of Louisiana in Sennett v. Shell Oil Co., 325 F.Supp. 1 (E.D.La.1971), after finding that a widow and child could not recover under either the Jones Act or the Death on the High Seas Act for the wrongful death of a seaman working on an Ocean Research vessel, held that these Acts did not preclude a remedy under the general maritime law. Despite its findings that the Death on the High Seas Act did not apply, the court had this to say regarding beneficiaries:

> "Should there be a conflict between schedule of beneficiaries or the recoverable items of damage under the *Moragne* right *and the Death Act*, there is no need to consider here which would control. For there is no showing of conflict in this case." 325 F.Supp. at 8.

In McPherson v. Steamship South African Pioneer, 321 F.Supp. 42 (E.D.Va. 1971), the Eastern District of Virginia decided that in situations where the Jones Act or the Death on the High Seas Act do apply *Moragne* did not intend to give an alternate remedy, thus beneficiaries in such situations should be only those who are contained in the two federal statutes.

The above decisions mainly disclose that the courts are striving toward uniformity in implementing this new federal cause of action. However, the majority of decisions are concerned with the substantive aspects of the right, the elements of recoverable damage, and defenses.[3] In Just v. Chambers, 312 U.

---

3. See Hornsby v. Fish Meal Company, 431 F.2d 865 (5 Cir. 1970): The state defense of contributory negligence has now been replaced by the admiralty comparative negligence doctrine; Petition of U. S. Steel Corp., 436 F.2d 1256 (6 Cir. 1970), cert. denied, Lamp v. United States Steel Corp., 402 U.S. 987, 91 S.Ct. 1649, 29 L.Ed.2d 153 (1971): Loss of consortium recoverable under state law cannot be recovered under the general maritime remedy which is limited to pecuniary loss; Simpson v. Knutsen, 444 F.2d 523 (9 Cir. 1971): Under general maritime remedy for wrongful death, there is no recovery for loss of consortium as would be allowed by state law, and comparative negligence applies; Raskin v. P. D. Marchessini, Inc., 437 F.2d 563 (2 Cir. 1971): Analogy may be made to the statute of limitations of the D.O.H.

S.A. but not to the state statute of limitations which would open "a Pandora's box that seems remote from anything anticipated by the Supreme Court when it decided *Moragne*." The question of proper beneficiaries was alluded to but not decided. *Id.* at 565. On remand the district court was instructed to apply the "proper rule under general maritime law, taking into consideration the comments in *Moragne* on the subject."; Fitzgerald v. A. L. Burbank & Co., Ltd., 451 F.2d 670 (2 Cir. 1971): Statute of limitations of the Death on the High Seas Act is to be used by analogy; Thomas v. C. J. Langenfelder & Son, Inc., 324 F.Supp. 325 (D.Md.1971): When death occurs on territorial waters, a claim for unseaworthiness under the new general maritime cause of action may be joined with a Jones Act claim and the Jones Act

S. 383, 392, 61 S.Ct. 687, 693, 85 L.Ed. 903 (1941), the Supreme Court noted: "Uniformity is required only when the essential features of an exclusive federal jurisdiction are involved." Plaintiffs urge here that the basis of liability is clearly the essential feature of this new right of action and that the determination of the beneficiaries is not so much a fundamental element of recovery as an incident of the newly fashioned remedy. Plaintiffs thus argue that the trial court was correct in applying state law since uniformity in determining who should recover does not appear to be an essential requirement.[4]

In the instant case both Arkansas law and the Death on the High Seas Act give a right to the parents to recover in a wrongful death action. The Arkansas statute allows a step-daughter to recover. The Death on the High Seas Act provides recovery for the decedent's "child." The latter Act, as are the statutory schemes of the Jones Act and the Federal Employee's Liability Act, is designed to compensate those beneficiaries who are shown to have suffered some pecuniary loss.

■ The trial court found that the decedent Dollarhide had "assumed the duty of supporting Antionette to whom he stood in loco parentis." 328 F.Supp. at 63. Defendant's argument that Texas law [5] (Dollarhide's domicile was in Texas) should be applied misconstrues the nature of the new maritime right for wrongful death. This is not a diversity case where state substantive law *must* be ascertained and applied. Therefore,

---

statute of limitations controls. No analogy is to be made to the shorter state statute of limitations nor to the shorter D.O.H.S.A. which governs only *outside* the three mile limit.

4. This view finds support in dissenting opinions of two Justices in The Tungus v. Skovgaard, 358 U.S. 588, 79 S.Ct. 503, 3 L.Ed.2d 524 (1959), and in Hess v. United States, 361 U.S. 314, 80 S.Ct. 341, 4 L.Ed.2d 305 (1960). Mr. Justice Brennan observed in *The Tungus*:

"It might be contended that the contours of the various state remedies are so diverse in the varying lists of statutory beneficiaries they provide that the area becomes one in which uniformity cannot in any event be attained, and accordingly it could be said to be inappropriate to seek uniformity even in the content of the duty to be enforced. I cannot find such a contention persuasive. The distribution of funds accruing to a decedent's representatives by reason of his death is a matter, in our federal system, peculiarly within the competence of the States. Certainly it is not a matter more destructive of the uniform character of the maritime law than were the state statutes of limitations enforced in Western Fuel Co. v. Garcia, 257 U.S. 233, 42 S.Ct. 89, 66 L.Ed. 210, *supra.* And it is no more disturbing to the maritime law whether the state distributional scheme is one provided generally by its law or one peculiar to its Wrongful Death statute." 358 U.S., at 609, 79 S.Ct., at 515.

Mr. Justice Harlan dissenting in *Hess* to the enforcement of a state conceived duty of care which exceeded the general maritime standard noted that a wrongful death act does not create the cause of action and thus cannot provide any of the elements fundamental to that cause. It merely provides a remedy to relieve the injury. The extent of the state interest is therefore simply to regulate the familial relationship. He states:

"Where tortious conduct causes death, the decision of a State to provide a right of action in favor of the victim's estate or beneficiaries represents a response to considerations peculiarly within traditional state competence: *providing for the victim's family*, and preventing pauperism by shifting what would otherwise be a public responsibility to those who committed the wrong. These are matters intimately concerned with the State's interest in regulating familial relationships. *Moreover, where the injury is wrongful under maritime law, this is the predominant, if indeed not the sole, purpose of the statute.*" (Emphasis ours.) 361 U.S. at 332, 80 S.Ct. at 353.

See also Dennis· v. Central Gulf Steamship Corporation, 453 F.2d 137, 140 (5 Cir. 1972), discussed infra.

5. Defendant concedes that it is not clear under Texas law whether a step-child may recover for the wrongful death of one who stood ·in loco parentis.

we need not become embroiled in a conflict of laws issue.[6]

Here the federal acts, the Death on the High Seas Act as well as the law of Arkansas, provide reasonable analogues to permit recovery for the parents and step-child. Each law seeks to compensate those beneficiaries who are dependent upon the decedent at the time of his death.

Defendant alternatively argues that the Jones Act should be applied thereby precluding recovery by the parents of the decedents by reason of the damages awarded the children and widow. Recovery by the latter class of beneficiaries under the Jones Act preempts recovery by any other class. We reject this reasoning. The Jones Act contains a number of limitations not present in the newly fashioned general maritime remedy. Recovery under the Act is possible *only* for the deaths of "seamen" and *only* upon the theory of "negligence" against a limited class of defendants (employers) and then solely for the benefit of a limited class of beneficiaries. The fact that these limitations find no counterpart in the new *Moragne* remedy is good reason for not selecting the Jones Act's limited beneficiary schedule as the proper analogue.[7]

We turn now to the question of whether the action for the decedent's

---

6. Had the federal district court been sitting as a diversity court faced with the problem of choosing which of several competing state laws should apply, the relevant contacts with the State of Arkansas may have been sufficient to support a choice of the law of that state. But, a federal court which sits in admiralty does not sit as a diversity court [Levinson v. Deupree, 345 U.S. 648, 651, 73 S.Ct. 914, 97 L.Ed. 1319 (1953)] and thus in fashioning the full details of this newly conceived federal cause of action, it would seem that more consideration must be given to the problem of which law is to serve as the proper analogue than to a mere finding of a quota of contacts with a particular state. Indeed, when the choice to be made is between differing state and federal laws, the geographic contacts may become less important.

We are here dealing with the implementation of a new federal right which was specifically devised for the purpose of achieving uniformity in the recovery for wrongful death. The *Moragne* Court expressly noted:

"Our recognition of a right to recover for wrongful death under general maritime law will assure uniform vindication of federal policies, removing the tensions and discrepancies that have resulted from the necessity to accommodate state remedial statutes to exclusively maritime substantive concepts. . . . Such uniformity not only will further the concerns of both of the 1920 Acts [The Death On The High Seas Act and The Jones Act] but also will give effect to the constitutionally based principle that federal admiralty law should be 'a system of law coextensive with, and operating uniformly in, the whole country.' The Lottawanna, 21 Wall. 558, 575, 22 L.Ed. 654 (1875)." Moragne v. State Marine Lines, 398 U.S. 375, 401–402, 90 S.Ct. 1772, 1788, 26 L.Ed.2d 339 (1970).

7. Perhaps an even more persuasive reason for rejecting this analogue is the fact that prior to *Moragne* the courts had held that when death occurs on the high seas, Congress intended the Jones Act claims to coexist with claims under the Death on the High Seas Act (applicable only outside the three mile limit) so that there could be an additional class of beneficiaries to supplement the Jones Act class of beneficiaries. See Doyle v. Albatross Tanker Corp., 367 F.2d 465, 467 (2 Cir. 1966) and cases cited therein; Petition of Risdal & Anderson, 291 F. Supp. 353 (D.Mass.1968); The Four Sisters, 75 F.Supp. 399, 400–401 (D.Mass. 1947). *Moragne* indicates that its newly created remedy can now be brought in conjunction with a Jones Act claim for deaths occurring within state waters. *Moragne* at 400–402. As a result, the theories of recovery will now be the same for death both within and without the three mile limit. It would be destructive of uniformity if fewer beneficiaries could recover when death occurred within the three mile limit than without. Hence, implementation of the remedy which now supplements the Jones Act when death comes on the high seas should also supplement the Jones Act schedule of beneficiaries in territorial claims. This can only be done by selecting a schedule of beneficiaries which is broader in scope than the Jones Act's limited alternative classes.

pain and suffering (mental anguish) survives. At common law the right of action possessed during a person's lifetime did not survive his death. Because of the harshness of the rule most all states have adopted what is generally called a survival statute. Arkansas has done so. See § 27–901 Ark.Stat.Ann. (1962). Prior to *Moragne* the general maritime common law recognized a cause of action only if the coastal state provided a survival act. *Just v. Chambers*, 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903 (1941). Since *Moragne* a growing body of law has recognized that as a logical extension of *Moragne*, which now provides a federal right of action for wrongful death, the decedent's claim for pain and suffering should survive. Thus, in Dennis v. Central Gulf Steamship Corporation, 453 F.2d 137, 140 (5 Cir. 1972), it was held: "The maritime law permits an injured party to recover damages for his pain and suffering." Although reliance for this proposition was placed on two pre-*Moragne* cases which purported to recognize such a cause of action in general maritime law and note was taken of *Moragne's* statement that by its decision the bar to access to general maritime law was removed, the decision of the Fifth Circuit can be supported without analyzing the soundness of the cases relied upon. For, as the *Moragne* Court recognized:

"[C]ertainly it better becomes the humane and liberal character of proceedings in admiralty to give than to withhold the remedy, when not required to withhold it by established and inflexible rules." 398 U.S. at 387, 90 S.Ct. at 1781, quoting from The Sea Gull, 21 Fed.Cas. 909, 910 (No. 12,578) (C.C.Md.1865).

The lower court in *Dennis* points out the anomaly that would result from denying such a cause of action, for the result would be that the decedent's family would thus be forced to lose that which the decedent could himself have collected had he filed a suit and prosecuted it to judgment during his life. 323 F.Supp. 943, at 949. Certainly the fortuitous event of death should not so deprive the survivors nor benefit the wrongdoer. Such a result would be contrary to the established principles of admiralty.

■ In recognizing a general maritime cause of action for wrongful death, the Supreme Court in *Moragne* looked to the plurality of state wrongful death acts to find that such an action has now become a part of our general law. Furthermore, the Court concluded that "Congress has given no affirmative indication of an intent to preclude the judicial allowance of a remedy for wrongful death . . . ." 398 U.S. at 393, 90 S.Ct. at 1784. By this same methodology the conclusion should be clear that the general maritime law now contains a survival action for pain and suffering.[8] Almost all states have enacted such statutes, the Jones Act specifically allows such an action, and Congress has given no affirmative indication of an intent to preclude such a remedy. Thus, we find the better course to follow is that of the Fifth Circuit which recognizes that today's maritime law encompasses such a

---

8. This more generous method of interpretation was recently utilized by the Supreme Court of Louisiana in Trahan v. Gulf Crews, Inc., 260 La. 29, 255 So.2d 63, 71 (1971), where it was held that the more comprehensive wrongful death remedy of the Outer Continental Shelf Lands Act applied to a worker who is servicing a platform fixed to the continental shelf even though the worker drowned in the high seas near the platform. That court remarked:

"To hold otherwise would be to deprive a worker on one of these structures, who happened to be injured or drowned as the result of a fall into the sea, of the greater remedies afforded by the *Rodrigue* decision [Rodrigue v. Aetna Casualty & Surety Co., 395 U.S. 352, 89 S.Ct. 1835, 25 L.Ed.2d 360 (1969)]. It would also be contrary to the more enlightened and liberal view in such matters, as reflected by the *Moragne* decision, which has greatly expanded the field of recovery for wrongful death under admiralty law to meet changing conditions and concepts affecting industry's duty toward its workers."

remedy independent of state law. "The admiralty has led, not followed." China Union Lines, Ltd. v. A. O. Andersen and Co., 364 F.2d 769, 798 (5 Cir. 1966), cert. denied, 386 U.S. 933, 87 S.Ct. 955, 17 L.Ed.2d 805 (1967).

■ Even if it may be argued that general maritime law still does not contain a survival remedy, it presents this court with no problem to find that the trial court properly followed the Arkansas survival statute (§ 27–901 Ark.Stat. Ann. (1962)) and correctly rewarded the estates under that statute. As the Second Circuit has said:

"Maritime law draws on many sources; when there are no clear precedents in the law of the sea, admiralty judges often look to the law prevailing on the land." Igneri v. Cie. de Transports Oceaniques, 323 F.2d 257, 259 (2 Cir. 1963), cert. denied, 376 U.S. 949, 84 S.Ct. 965, 11 L.Ed.2d 969 (1964).[9]

In conclusion we hold that the federal maritime law allows recovery for wrongful death to those parents and children, including step-children, who are found to have sustained a pecuniary loss. Both the Death on the High Seas Act and the statutes of Arkansas, the inland state through which the navigable stream flowed, provide a valuable reference for determining the schedule of beneficiaries. Neither commands complete adherance. Yet it is our obligation to consider all relevant federal and state legislative enactments and synthesize a schedule of beneficiaries in keeping with the liberal tenets of the general maritime law. Neither Act in this case can be said to be inimical to the liberal poli-

---

9. In Dugas v. National Aircraft Corp., 438 F.2d 1386 (3 Cir. 1971), it was held that even though no survival remedy was contained in the Death on the High Seas Act, that Act did not preclude recovery *under a state survival statute*. Reference is there made to Kernan v. American Dredging Co., 355 U.S. 426, 430, n. 4, 78 S.Ct. 394, 2 L.Ed.2d 382, wherein it is "presumed" that recovery under the Death on the High Seas Act can be had along with recovery for damages accrued prior to the decedent's death "if a pertinent state statute is effective to bring about a survival of the seaman's right." There is really nothing new in this approach for it has long been held that even though admiralty suits are governed by federal substantive and procedural law, courts applying maritime law may adopt state law by express or implied reference or by virtue of the interstitial nature of federal law. Alcoa Steamship Co. v. Charles Ferran & Co., 383 F.2d 46, 50 (5 Cir. 1967), cert. denied, 393 U.S. 836, 89 S.Ct. 111, 21 L.Ed.2d 107 (1968). More recently the District Court for the Northern District of Ohio has offered this post-*Moragne* analysis:

"The question of whether an action can survive to a representative of a deceased party plaintiff is strictly a matter of state substantive law. See McManus v. Lykes Bros. Steamship Co., 275 F.Supp. 361 (E.D.La.1967). Since the general maritime law itself contains no survival provision, it is only through the adoption of a state survival act by this Court that the right of survival of the action may accrue to the representative of the deceased. *Moragne, supra,* held that the general maritime law does contain a provision for wrongful death, but was silent as to the survival of personal injury actions after the death of the plaintiff. However, the thrust of *Moragne* is that the law of admiralty should be expanded so that seamen are given a federal right to recover from their employers for negligence regardless of the location of their injury or death.

". . . Additionally, there is nothing that the defendant point out to us or that the Supreme Court says either impliedly or expressly to indicate that the survival rules may not be determined in accordance with applicable state rules or even that it might not be included in a court fashioned general maritime rule. This Court, therefore, shall apply the law of the appropriate jurisdiction, whether that be the law of Michigan or the law of the province of Ontario." Marsh v. Buckeye Steamship Company, 330 F.Supp. 972, 974 (N.D.Ohio 1971).

Although choosing to utilize state law, the Ohio district court did go on to remark, "However, it should be noted that it is only a small leap from the decision in *Moragne* to an acceptance of the survival of personal injury actions as an integral part of the general maritime law." *Id.* at 974–975. We are willing to make that leap.

cies followed in maritime law.[10] Additionally, we hold that *Moragne* provides the foundation for recognizing the federal right that an action for pain and suffering survives the death of the injured party. Even without such a holding, uniformity of maritime law would not be disturbed by following the Arkansas survival statute.

Judgment affirmed.

10. We are not now faced with a problem where there exists a conflict between the two laws.