The PUBLIC ADMINISTRATOR OF the COUNTY OF NEW YORK as Administrator of the goods, chattels and effects of Dimitrios Kontos, Plaintiff-Appellee,

v.

ANGELA COMPANIA NAVIERA, S.A., Defendant-Appellant.

No. 128, Docket 78–7141.

United States Court of Appeals, Second Circuit.

Argued Oct. 4, 1978.

Decided Jan. 16, 1979.

Victor S. Cichanowicz, New York City (Peter E. Kelly, Cichanowicz & Callan, New York City, of counsel), for defendant-appellant.

Herbert Lebovici, New York City (Lebovici & Safir, New York City, of counsel), for plaintiff-appellee.

Before KAUFMAN, Chief Judge, and SMITH and MESKILL, Circuit Judges.

MESKILL, Circuit Judge:

Until 1970 there existed no independent, nonstatutory remedy for wrongful death under the general maritime law. Now,

however, such a remedy exists. *Moragne v. States Marine Lines*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). In this appeal we are called upon to consider the proper time limitation period for this cause of action. For the reasons that follow, we reverse a decision of the United States District Court for the Southern District of New York, Constance Baker Motley, *Judge*, and remand for reconsideration of the defense of laches.

The SS ANGELA II was a merchant vessel registered in the Republic of Liberia and flying the Liberian flag. Its registered owner was the defendant-appellant Compania Naviera Angela, S.A., a Panamanian corporation owned entirely by citizens of the United States residing in New York. During the latter part of the 1960's the ANGELA II was used off the shores of India, Pakistan and Japan to haul grain and other supplies from larger ships into ports they were unable to enter, a process known as "lightering."

In the fall of 1968, Dimitrios Kontos, a Greek seaman, was hired as the Second Engineer on the ANGELA II. In April of 1969 he became ill and he was visited on the ship by a doctor. On September 8 he signed off the ship and returned to Greece, where he received further medical treatment. Although he seemed for a while to be on the road to recovery, on December 28, 1969, he was admitted to an Athens hospital, where he died two days later.

More than four years later, on March 20, 1974, Thomas J. Fitzgerald, acting in his capacity as Public Administrator of New York County and as the representative of Kontos' widow and children,[1] filed suit against Kontos' employer in the Southern District of New York.[2] The complaint alleged violations of the Jones Act, 46 U.S.C. § 688, the general maritime law of the United States, and the maritime law of the Republic of Liberia. The gist of Fitzgerald's complaint was that when Kontos be-

came ill he was not provided with adequate medical care and that, as a result, Kontos' medical condition worsened and he eventually died. *See De Zon v. American President Lines*, 318 U.S. 660, 667–68, 63 S.Ct. 814, 87 L.Ed. 1065 (1943); *Fitzgerald v. A. L. Burbank & Co.*, 451 F.2d 670, 679–80 (2d Cir. 1971). *See generally* G. Gilmore & C. Black, The Law of Admiralty ch. VI, § 6–6 *et seq.* (2nd ed. 1975). The defendant moved for summary judgment on the ground that the action was time barred. On June 22, 1976, the district court issued a memorandum opinion denying the defendant's motion and ordering the cause to trial. 417 F.Supp. 151. The district court subsequently found the defendants liable for the wrongful death of Kontos and awarded damages. This appeal followed.

■ The district court correctly determined that American law was the applicable body of law. *See Hellenic Lines Limited v. Rhoditis*, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 282 (1970) (Jones Act); *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953) (Jones Act); *Romero v. International Terminal Operating Co.*, 358 U.S. 354, 382, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959) (general maritime law). *See generally* The Law of Admiralty, *supra*, ch. VI, § 6–63 *et seq.* The district court also correctly decided, and Fitzgerald conceded, that the portion of the complaint resting expressly on the Jones Act was time barred by the three-year statute of limitations of the Federal Employers' Liability Act, 45 U.S.C. § 56, which is incorporated into the Jones Act. *See Sea-Land Services v. Gaudet*, 414 U.S. 573, 576, 94 S.Ct. 573, 39 L.Ed.2d 9 (1974); *id.* at 597, 94 S.Ct. 573 (Powell, J., dissenting); *Moragne v. States Marine Lines*, 398 U.S. 375, 394 & 407, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). With regard to the time limitation to be imposed on the cause of action arising under the general maritime law, however, a cause in-

---

1. Mr. Bruno Cappellini has since assumed the office of New York County Public Administrator.

2. At trial, the parties agreed to dismiss the action as to two New York corporations originally named as defendants in this action, Commodity Chartering Corporation and Ocean Shipping and Trading Corporation.

dependently cognizable under the court's admiralty jurisdiction, the district court determined that the doctrine of laches was to be applied and that reference was to be made to New York State's six-year statute of limitations for contract actions. *See Izquierdo v. Cities Service Oil Co. (Pa.)*, 244 F.Supp. 758, 761 (S.D.N.Y.1965); N.Y.Civ. Prac. § 213(2). Although we agree that the doctrine of laches is applicable in this case, it is our judgment that reference should be made to the relevant federal statute rather than a New York State statute. Accordingly, we reverse and remand.

## DISCUSSION

In 1886 the Supreme Court held that, in the absence of a statute, the general maritime law itself did not provide a cause of action for wrongful maritime deaths. *The Harrisburg*, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886). As a result, until 1920 there existed no federal remedy whatsoever for a death caused on the high seas by a breach of one of the duties imposed by federal maritime law. For deaths that were not caused on the "high seas," i. e., deaths caused within state territorial waters, federal courts applied state wrongful death statutes in order to grant recovery. Then, in 1920, Congress passed two statutes designed to provide a federal remedy for wrongful deaths—the Death on the High Seas Act, 46 U.S.C. § 761 *et seq.*, and the Jones Act, 46 U.S.C. § 688. Section 1 of the Death on the High Seas Act provides as follows:

> Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas beyond a marine league from the shore of any State, . . . the personal representative of the decedent may maintain a suit for damages in the district courts of the United States, in admiralty, for the exclusive benefit of the decedent's wife, husband, parent, child, or dependent relative against the vessel, person, or corporation which would have been liable if death had not ensued.

46 U.S.C. § 761. The Jones Act provides as follows:

> Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.

46 U.S.C. § 688. The Federal Employers' Liability Act, 45 U.S.C. § 51 *et seq.*, is "the régime which the Jones Act made applicable to seamen." *Igneri v. Cie. de Transports Oceaniques*, 323 F.2d 257, 266 (2d Cir. 1963), *cert. denied*, 376 U.S. 949, 84 S.Ct. 965, 11 L.Ed.2d 969 (1964). *See* The Law of Admiralty, *supra*, ch. VI, §§ 6–26 & 6–27.

These two statutes, however, did not erase the need for an independent, nonstatutory right of recovery for wrongful death under the general maritime law. In *Moragne v. States Marine Lines*, 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), the Court was confronted with one of the peculiarities resulting from the absence of a nonstatutory federal wrongful death remedy under the general maritime law—when a wrongful death was caused within state territorial waters, and when that death was caused by a vessel's unseaworthiness rather than negligence, neither federal nor state statutes provided for recovery. The Jones Act and the state statutes afforded a remedy only for negligence; the Death on the High Seas Act allowed recovery only for deaths caused outside territorial waters. In order to fill this gap, the Court overruled *The Harrisburg* and recognized a remedy

for wrongful death under the general maritime law.

Aware that it was announcing an entirely new cause of action, the *Moragne* Court refrained from addressing itself to what it called the "subsidiary issues" relating to that cause of action—the time limitation period, the measure of damages, and the schedule of beneficiaries. "[F]inal resolution" of such issues, the Court said, "should await further sifting through the lower courts in future litigation." 398 U.S. at 408, 90 S.Ct. at 1792. But the Court did characterize the Death on the High Seas Act as "the congressional enactment that deals specifically and exclusively with actions for wrongful death, and that simply provides a remedy—for deaths on the high seas—for breaches of the duties imposed by the general maritime law," and as "[t]he only [federal statute] that applies not just to a class of workers but to any 'person,' and that bases liability on conduct violative of general maritime law." 398 U.S. at 407–08, 90 S.Ct. at 1791. The Court referred in passing to the argument that the new wrongful death action should "share the doctrine of laches immemorially applied to admiralty claims" and that, in applying that doctrine, "consideration" should be given to the two-year statute of limitations of the Death on the High Seas Act, 46 U.S.C. § 763. But the Court offered only the following hints as to how the subsidiary issues should ultimately be handled: "the difficulties should be slight in applying accepted maritime law to actions for wrongful death," 398 U.S. at 406, 90 S.Ct. at 1791; "[i]f . . . subsidiary issues should require resolution . . . the courts will not be without persuasive analogy for guidance," 398 U.S. at 408, 90 S.Ct. at 1792.

In *Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), the Court considered one of these "subsidiary issues"—the measure of damages for a wrongful death resulting from injuries suffered inside state territorial waters due to a vessel's unseaworthiness. Despite the fact that neither the Death on the High Seas Act nor the Jones Act would allow damages

for loss of society, *see* 46 U.S.C. § 762; *Igneri v. Cie. de Transports Oceaniques, supra,* 323 F.2d at 266, the Court decided that such damages should be allowed under the general maritime law. The Court based its decision on the fact that neither federal statute applied, the fact that the majority of state wrongful death statutes allowed for such damages, and on "the humanitarian policy of the maritime law to show 'special solicitude' for those who are injured within its jurisdiction." 414 U.S. at 587–88, 94 S.Ct. at 816. In other words, the Court decided that where no federal statute was applicable, the Court was free to, indeed had the responsibility to, shape the general maritime wrongful death action according to its own policy determinations. At the same time, the Court again referred to the Death on the High Seas Act as the federal statute of special significance in fashioning the new wrongful death remedy. 414 U.S. at 583 n.10, 94 S.Ct. 806.

In *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978), the Supreme Court held that the Death on the High Seas Act governed the measure of damages in a general maritime law action for the wrongful death of a person caused by negligence outside of territorial waters. Thus, the plaintiffs in *Higginbotham* were not allowed to recover damages for loss of society because such damages are not allowed by the statute. These were precisely the type of damages allowed in *Gaudet* for a wrongful death that was caused *within* territorial waters. The Court explained that *Gaudet* "applies only to coastal waters," 436 U.S. at 623, 98 S.Ct. 2010, and was, in simple terms, based on a policy determination by the Court which differed from the policy determination made by the Congress when it passed the Death on the High Seas Act.

The *Higginbotham* Court made it clear that, where Congress has made a judgment regarding the shape of wrongful death recoveries, the courts are not free to substitute their own judgments.

[W]e need not pause to evaluate the opposing policy arguments. Congress has struck the balance for us.

. . . . .

Damages aside, none of the issues on which DOHSA is explicit have been settled to the contrary by this Court in either *Moragne* or *Gaudet.* Nor are other disparities likely to develop. As *Moragne* itself implied, DOHSA should be the courts' primary guide as they refine the nonstatutory death remedy, both because of the interest in uniformity and because Congress' considered judgment has great force in its own right.

. . . . .

The Death on the High Seas Act . . . announces Congress' considered judgment on such issues as the beneficiaries, the limitations period, contributory negligence, survival, and damages. The Act does not address every issue of wrongful death law, . . . but when it does speak directly to a question, the courts are not free to "supplement" Congress' answer so thoroughly that the Act becomes meaningless.

In *Moragne*, the Court recognized a wrongful death remedy that supplements federal statutory remedies. . . . There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted. *In the area covered by the statute, it would be no more appropriate to prescribe a different measure of damages than to prescribe a different statute of limitations, or a different class of beneficiaries.* . . . [W]e have no authority to substitute our views for those expressed by Congress in a duly enacted statute.

436 U.S. at 623–26, 98 S.Ct. at 2014–2015. (emphasis added; footnote omitted). *See also* 436 U.S. 624 n.19, 98 S.Ct. at 2014:

*Moragne* recognized that the courts would need to devise a limitations period and a schedule of beneficiaries for the new death remedy. The Court considered several alternative solutions to these problems. Only DOHSA, however, figured prominently in the discussion of both issues.

■■ Read together, these three recent Supreme Court decisions stand for the following proposition: when a death is caused outside territorial waters, and when a wrongful death action is brought under the general maritime law, federal courts should be guided by the Death on the High Seas Act as to the subsidiary elements of that cause of action; where a death is caused inside territorial waters, however, and a wrongful death action is brought under the general maritime law, the subsidiary elements of the cause of action may be different from or broader than those delineated in the Death on the High Seas Act. The general maritime law cause of action is, of course, available to plaintiffs in both situations. But in the former that cause of action is circumscribed by the judgment of Congress; in the latter it is circumscribed by the humane policies implicit in the judicially created cause of action and by the interest in the uniform administration of admiralty actions.

■■ The timeliness of an action brought under the general maritime law is to be determined under the doctrine of laches, the doctrine "immemorially applied to admiralty claims," *Moragne, supra,* 398 U.S. at 406, 90 S.Ct. 1772. "[T]he existence of laches is a question primarily addressed to the discretion of the trial court." *Czaplicki v. The Hoegh Silvercloud,* 351 U.S. 525, 534, 76 S.Ct. 946, 952, 100 L.Ed. 1387 (1956), *quoting Gardner v. Panama R. Co.,* 342 U.S. 29, 30, 72 S.Ct. 12, 96 L.Ed. 31 (1951). The questions to be answered in the exercise of that discretion are whether there existed satisfactory excuse for the delay in bringing the cause of action and whether allowing the action to go forward despite the delay would unfairly prejudice the defendant. These questions are to be evaluated in light of the "peculiar equitable circumstances" of the case. *Czaplicki, supra,* 351 U.S. at 533, 76 S.Ct. 946.

**64**

The application of the doctrine of laches also requires reference to or consideration of the analogous statute of limitations.[3] It is our judgment that the recent decisions of *Moragne, Gaudet,* and *Higginbotham* make inescapable the conclusion that the doctrine of laches is to be applied to wrongful death actions brought under the general maritime law in light of the two-year statute of limitations found in the Death on the High Seas Act.[4] Thus, we remand this case to the district court for reconsideration of the defense of laches, this time with reference to the analogous two-year statute of limitations.

Where the analogous statute of limitations has expired, as it has here, the burden of proof on these matters is as follows:

[W]hen a plaintiff who asserts a maritime claim after the . . . statute has run, presents evidence tending to excuse his delay, the court must weigh the legitimacy of his excuse, the inference to be drawn from the expiration of the . . . statute, and the length of the delay, along with evidence as to prejudice if the defendant comes forward with any. Moreover, although a plaintiff who has delayed bringing suit beyond the analogous . . . period has the ultimate burden of persuasion both as to the excuse for his own delay and as to lack of prejudice to the defendant, . . . these two factors are not to be viewed independently.

*Larios v. Victory Carriers, Inc.,* 316 F.2d 63, 66–67 (2d Cir. 1963) (citation omitted). *See also Hill v. W. Bruns & Co.,* 498 F.2d 565, 568 (2d Cir. 1974). To this we add the following: given the clarity of the Supreme Court's instructions to apply the two-year statute of limitations of the Death on the High Seas Act to wrongful death actions under the general maritime law, and given the Court's repeated expressions of concern for uniformity in the administration of this judge-made cause of action, the plaintiff in this case has the burden of showing what this Court has called "strong justification for delay." *Fitzgerald v. A. L. Burbank & Co., supra,* 451 F.2d at 683. *See also Raskin v. P. D. Marchessini, Inc.,* 437 F.2d 563, 565–66 (2d Cir. 1971). In the absence of such a showing, the district court should dismiss Fitzgerald's wrongful death cause of action arising under the general maritime law.

Reversed and remanded.[5]

---

**3.** *See Czaplicki v. The Hoegh Silvercloud,* 351 U.S. 525, 533–34, 76 S.Ct. 946, 100 L.Ed. 1387 (1956). *See also Fitzgerald v. A. L. Burbank & Co.,* 451 F.2d 670, 683 & n.12 (2d Cir. 1971); *Raskin v. P. D. Marchessini, Inc.,* 437 F.2d 563, 566 (2d Cir. 1971); *Larios v. Victory Carriers, Inc.,* 316 F.2d 63, 66 (2d Cir. 1963); *Oroz v. American President Lines,* 259 F.2d 636, 639 (2d Cir. 1958), *cert. denied,* 359 U.S. 908, 79 S.Ct. 584, 3 L.Ed.2d 572 (1959).

**4.** It could be argued that because the general maritime action in this case was joined with the Jones Act that the three-year statute of limitations governing that statute should also govern this case. *See McAllister v. Magnolia Petroleum Co.,* 357 U.S. 221, 224, 78 S.Ct. 1201, 2 L.Ed.2d 1272 (1958). But *McAllister* was decided before the cases of *Moragne, Gaudet,*

and *Higginbotham,* and these more recent cases supersede whatever prior suggestions might have been made to the contrary. *Fitzgerald v. A. L. Burbank & Co., supra,* 451 F.2d at 683 & n.12.

**5.** We are not persuaded by the appellant's attack on Judge Motley's factual findings. Her conclusions that Kontos died of hepatitis and that this ailment could have been remedied but for the negligence of the appellant were not "clearly erroneous." Fed.R.Civ.P. 52(a).

Should the plaintiff prevail on remand, the award of damages shall be limited to those allowed by the *Higginbotham* case, the death in this case having been caused outside of coastal waters.