**Arthur H. BARBE, Admr., Plaintiff-Appellee,**

v.

**David N. DRUMMOND et al., Defendants-Appellees,**

**David N. Drummond, Defendant-Appellant.**

**No. 73–1390.**

United States Court of Appeals, First Circuit.

Argued Sept. 5, 1974.

Decided Nov. 26, 1974.

Henry D. White, Boston, Mass., for David N. Drummond, appellant.

John A. Donovan, Jr., Boston, Mass., with whom Thomas D. Burns and Burns & Levinson, Boston, Mass., were on brief, for Arthur H. Barbe, appellee.

Before McENTEE and CAMPBELL, Circuit Judges, and CLARY,* District Judge.

McENTEE, Circuit Judge.

This admiralty suit was commenced by the administrator of Janet Barbe's estate to recover for her pain and suffering following the sinking of a motorboat owned and operated by defendant Drummond in which she was a passen-

---

* Senior District Judge of Eastern District of Pennsylvania sitting by designation.

ger. In a nonjury trial the court concluded that Drummond had been negligent and awarded the plaintiff $15,000 plus interest for her conscious pain and suffering and $1,500 plus interest for her funeral expenses. The defendant's appeal raises three issues: whether the evidence warranted a finding of negligence, whether damages for conscious suffering can be awarded under the Death on the High Seas Act (DOHSA) or under general maritime law, and whether funeral expenses can be awarded under DOHSA or the general maritime law.

I

■■ In considering the first issue the standard of review in this court is clear. "In reviewing a judgment of a trial court, sitting without a jury in admiralty, the Court of Appeals may not set aside the judgment below unless it is clearly erroneous." McAllister v. United States, 348 U.S. 19, 20, 75 S.Ct. 6, 8, 99 L.Ed. 20 (1954). We can conclude that a finding is clearly erroneous only if after reviewing the entire evidence we are "left with the definite and firm conviction that a mistake has been committed." *Id.* In the instant case it is clear that no mistake has been made in finding Drummond negligent.

On Friday, May 16, 1969, the defendant took possession of a used 26-foot Owens Sea Skiff named "Diane D" which he had purchased from Boston Boat Sales, Inc. Late in the afternoon of the next day, with Miss Barbe as his guest, he set out from Marshfield, Massachusetts, intending to arrive at Sesuit Harbor in East Dennis, Massachusetts, around 10 o'clock that evening. This course required the craft to go out the North River to Massachusetts Bay and then across to Sesuit Harbor. In passing under the bridge that carries Route 3A across the North River, the defendant hit the bridge pilings. The testimony conflicted as to how many times contact was made and whether both sides of the boat hit the bridge. Two witnesses testified that the boat did not follow the course of the river from that point, but instead crossed over some mussel beds and proceeded erratically outside the channel and forced two other boats to seek safety outside the path of the Diane D. One witness testified that near the mussel beds there were cement blocks that had once been moorings. The defendant stated that he inspected the Diane D for damage both after his passage under the bridge and when he reached the mouth of the river. Near sunset, when the boat was about five miles off Manomet Point, the defendant observed a small quantity of water slopping up over the flooring in the cabin. Recognizing that the boat was flooding, he started the bilge pump, but confused the air vent pipe with the bilge pump and tried to make the air vent pipe reach the water by adding an extension to it. When the engine died almost immediately, he tried to restart it. When that failed, he tried to radio for help, but could get no answer. Since sinking seemed imminent, defendant fashioned a makeshift raft from floatable cushions and an inner tube and launched this with Miss Barbe on it. She died of exposure one to three hours later, but defendant was rescued the next morning.

Examination of the Diane D, which was recovered from the bay, disclosed that it flooded because of a long opening along a seam between two pieces of plywood planking under the hull on the starboard side. Testimony from marine surveyors showed that the opening must have resulted from striking an object such as a lobster buoy or a log. The impact had broken a frame in the area, and the seam could have gradually opened up from driving the boat into the sea. The defendant had heard over the boat radio before leaving the marina that small craft warnings were posted until sunset, and he acknowledged that the Diane D had pounded against the water and banked on the waves. Small craft warnings, in the opinion of one witness, would pertain to any boat under 65 feet long.

There was testimony from the defendant that he had experience racing sailing boats and running small motor boats, but had never previously owned a power boat. The defendant admitted that he had never used the boat radio to call anyone, and thus had no personal knowledge whether it transmitted. Other testimony indicated that there are increased risks in operating boats at night. The only navigational aids are those buoys which are lighted. Objects floating in the water are more likely to be hit than to be seen and avoided. Rescue is more difficult if trouble develops, and operation of the boat in heavy weather is more difficult when you cannot see the wave formation.

Viewing this and other evidence, the court concluded that negligence and proximate cause were both established:

"Mr. Drummond had no business going out when he did under the conditions that he did, in the light of his inexperience with this type of boat and in the light of his lack of knowledge of the condition of various of its safety devices. . . .

"I find that he was negligent in other respects, each of which were [sic], under the combination of circumstances, proximate causes[:] . . . his disinclination to take additional instructions and a test drive from the Boston Boat Sales people . . . ; his confusion as to the method of operation of the bilge pump; his lack of knowledge whether there was or was not a proper grounding of the radio; his poor driving of the craft as it went under the tunnel . . . .

". . . I consider that it was negligent on his part not to have discovered the water sooner than he did. He discovered the water when there was a film of water on the floor of the craft. The craft had to get a solid smash of which any person aboard would have been very much aware.

. . . [T]here was a positive smash such that should have made him inspect the water condition of that hull more often than he did.

"I consider, furthermore, that had he sooner discovered the water, the radio, whether or not it was grounded, could in all probability have been employed to have summoned [sic] help."

■ After carefully examining the entire transcript, we conclude there was evidence to support each finding of negligence made by the trial court. Not only was there some evidence, but the weight of the evidence supported the trial court's findings. Hence they were definitely not clearly erroneous and must stand.

## II

■ We turn now to appellant's claim that damages for conscious pain and suffering cannot be awarded to the plaintiff under either DOHSA or the general maritime law. The recovery DOHSA provides is "a fair and just compensation for the pecuniary loss sustained . . . ." 46 U.S.C. § 762 (1970). This language has been held to exclude pain and suffering as an element of damages. Dennis v. Central Gulf S. S. Corp., 453 F.2d 137 (5th Cir.), cert. denied, 409 U.S. 948, 93 S.Ct. 286, 34 L.Ed.2d 218 (1972); Canillas v. Joseph H. Carter, Inc., 280 F.Supp. 48 (S.D.N.Y.1968); Decker v. Moore-McCormack Lines, Inc., 91 F.Supp. 560 (D. Mass.1950). Thus plaintiff cannot sustain any damages for pain and suffering by relying on DOHSA.

But plaintiff advances three possible theories based on the general maritime law to support his recovery of damages for pain and suffering. The first theory is to look to state law for a survival statute and use that to supplement federal maritime law. See Romero v. International Terminal Operating Co., 358 U. S. 354, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959).[1] It is clear that if Miss Barbe

1. "State remedies for wrongful death and state statutes providing for the survival of actions, both historically absent from the relief offered by the admiralty, have been up-

had lived, she would have had a federal cause of action in admiralty for the pain and suffering she endured. Pope & Talbot, Inc. v. Hawn, 346 U.S. 406, 74 S.Ct. 202, 98 L.Ed. 143 (1953). Though she did not live, according to this theory her action can still be maintained by the administrator of her estate if a state survival statute applies. Just v. Chambers, 312 U.S. 383, 61 S.Ct. 687, 85 L.Ed. 903 (1941).[2] Since the plaintiff, the defendant, and the victim were all residents of Massachusetts and since the boat was moored there, we look to Massachusetts law and apply its survival statute, Mass.Gen.Laws ch. 228, § 1(2)(a) (1958).[3]

The advantage of this theory—and the reason it was accepted in a recent case, Dugas v. National Aircraft Corp., 438 F.2d 1386 (3d Cir. 1971)—is that it avoids the apparent conflict with DOHSA that results if pain and suffering is held to be an element of damages under the recently recognized federal maritime wrongful death action. See the discussion *infra* of Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). This reasoning holds that DOHSA did

not preempt the separate and distinct remedy given by state survival statutes, and thus it is proper to award damages under the latter statutes. On the other hand, the disadvantages of this theory are twofold. It requires a federal court to divine whether the state survival statute was meant to apply to admiralty claims, which may be difficult enough for torts occurring in state territorial waters but is even more difficult in a case like this where the death occurs on the high seas. *Cf. Moragne, supra,* at 393 n. 10, 90 S.Ct. 1772. This theory also makes recovery by an admiralty plaintiff turn on whether the concerned state has enacted a survival statute.

The second theory for sustaining the plaintiff's recovery depends on *Moragne, supra.* In that case, the Supreme Court overruled The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886), and held that general maritime law provides a cause of action for wrongful death caused by unseaworthiness. Part of the plaintiff's claim in *Moragne* was an unseaworthiness claim based on the Florida wrongful death statute. Prior to the Court's decision in *Moragne,* a state wrongful death statute could be used in

---

held when applied to maritime causes of action." 358 U.S. at 373, 79 S.Ct. at 480 (footnotes omitted).

2. Two problems in applying *Just* should be noted. First, *Just* spoke of supplementing federal maritime law with the state survival statute to maintain the claim against the estate of the deceased tortfeasor, not to maintain the claim for the benefit of the estate of the deceased victim, as in this case. This distinction does not dictate a different result, however. O'Leary v. United States Lines Co., 215 F.2d 708, 710–711 (1st Cir. 1954) (dicta), cert. denied, 348 U.S. 939, 75 S.Ct. 360, 99 L.Ed. 735 (1955).

The second, and more significant problem, is that *Just* supplemented federal maritime law in a case where the tort occurred in state territorial waters, where DOHSA does not apply, 46 U.S.C. §§ 761, 767 (1970) (DOHSA applies "beyond a marine league from the shore"), but in this case the tort occurred where DOHSA applies, thus precluding recovery for pain and suffering after the death of the tort victim. Decker v. Moore-McCormack Lines, Inc., 91 F.Supp. 560 (D.Mass.1950). *Contra,* Montgomery v. Goodyear Tire & Rubber Co., 231 F.Supp.

447 (S.D.N.Y.1964). Bearing in mind that DOHSA only provides a wrongful death remedy and is silent about any survival action, *Montgomery, supra,* one can argue that DOHSA does not apply to the pain and suffering claim, and thus the plaintiff is not put in the position of "supplementing" a statute that arguably applies and denies him relief. There would be no constitutional objection to allowing state law to operate on the high seas. The Hamilton, 207 U.S. 398, 28 S.Ct. 133, 52 L.Ed. 264 (1907), made clear that in the absence of congressional action a state statute can constitutionally apply to a case like the one at bar.

3. The pertinent part of this statute reads: "In addition to the actions which survive by the common law, the following survive:
—

. . . . .

(2) Actions of tort (a) for assault, battery, imprisonment or other damage to the person . . . ."
This statute keeps a negligence action for pain and suffering viable despite the death of the tort victim. Gaudette v. Webb, 1972 Mass.Adv.Sh. 1131, 284 N.E.2d 222 (1972).

admiralty, but the state claim had to be enforced "as an integrated whole, with whatever conditions and limitations the creating State has attached." The Tungus v. Skovgaard, 358 U.S. 588, 592, 79 S.Ct. 503, 506, 3 L.Ed.2d 524 (1959). Thus, when the Florida Supreme Court, answering the question certified to it by the Fifth Circuit Court of Appeals, held that the Florida wrongful death statute did not encompass unseaworthiness as a basis of liability, the Fifth Circuit was forced to dismiss that part of Moragne's claim. The Supreme Court, however, reexamined the wisdom of the rule announced in The Harrisburg, upon which *The Tungus* was based, and decided to recognize a maritime cause of action for wrongful death, thus freeing maritime remedies for wrongful death from the control of state law.

*Moragne* left the exact dimensions of the maritime action for wrongful death to further litigation in the courts:

> "We do not determine this issue [the proper schedule of beneficiaries for the newly recognized claim] now, for we think its final resolution should await further sifting through the lower courts in future litigation. . . . If still other subsidiary issues should require resolution, such as particular questions of the measure of damages, the courts will not be without persuasive analogy for guidance. Both the Death on the High Seas Act and the numerous state wrongful-death acts have been implemented with success for decades. . . ."

398 U.S. at 408, 90 S.Ct. at 1792. Plaintiff directs our attention to two circuit court cases which recognize pain and suffering as compensable in a *Moragne*

wrongful death action. Greene v. Vantage S. S. Corp., 466 F.2d 159 (4th Cir. 1972); Dennis v. Central Gulf S. S. Corp., 453 F.2d 137 (5th Cir.), cert. denied, 409 U.S. 948, 93 S.Ct. 286, 34 L. Ed.2d 218 (1972).[4] *A major difficulty with applying the reasoning in Greene and Dennis to the instant case is that* both of those cases involved accidents in state territorial waters. When an accident occurs in state territorial waters, where DOHSA does not apply, see 46 U. S.C. §§ 761, 767 (1970), it is easy to apply *Moragne* reasoning and conclude that the previous absence of a federal cause of action for wrongful death has been remedied. But in a case like the instant one, where the accident occurred on the high seas, it is not so easy to apply *Moragne* to generate a cause of action.[5] The distinction is that *Moragne* provided a cause of action where one did not previously exist, but here a congressionally provided cause of action already exists, namely, DOHSA. The reason plaintiff finds DOHSA unsatisfactory is that it does not provide recovery for pain and suffering prior to death.

We find the third theory presented by plaintiff to be the most persuasive. This theory follows a middle course between the difficulties presented by the two prior theories. Specifically, we believe that the policy enunciated by the Supreme Court in *Moragne* provides ample support for us to hold that there is a federal maritime survival action, created by decisional law, for pain and suffering prior to death. This conclusion comports well with the philosophy of *Moragne,* in that it remedies the non-existence of a feder-

---

4. Other cases adopting this route to award damages for pain and suffering to an admiralty plaintiff in cases like this one are In re Farrell Lines, Inc., 339 F.Supp. 91 (E.D. La.1971), and In re Sincere Navigation Corp., 329 F.Supp. 652 (E.D.La.1971). *See also* Nye v. A/S D/S Svendborg, 358 F. Supp. 145 (S.D.N.Y.1973) (allowing damages for pain and suffering, but theory unclear).

5. *But see* Sennett v. Shell Oil Co., 325 F. Supp. 1, 7 (E.D.La.1971): "Though *Mor-*

*agne* dealt with the problem of death in coastal waters, which was uniquely complex, nothing in the opinion suggests that the maritime right is to be denied those whose death is brought about wrongfully on the High Seas. As *Moragne* pointed out, the policy implicit in the state and federal wrongful death statutes indicates that recovery for maritime death should be permitted absent 'a legislative direction to except a particular class of cases.' [398 U.S. at 393, 90 S.Ct. at 1783]."

al cause of action and thereby avoids the problem of making plaintiff's recovery turn on the existence of a state survival statute, as under the *Dugas* theory. It also avoids a conflict with DOHSA, since survival and wrongful death actions have long been recognized as distinct causes of action. *See* Sea-Land Services, Inc. v. Gaudet, 414 U.S. 573, 575–576 n. 2, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974).

■ It may be objected that Congress could have placed a survival provision in DOHSA if it had wanted one, and thus a conflict with DOHSA is not really avoided. However, this argument proves too much. Congress could well have extended the wrongful death action provided by DOHSA for the high seas all the way to the shore, thus remedying legislatively the vacuum which *Moragne* filled decisionally. Yet this was not accepted by the Supreme Court in *Moragne* as a reason for declining to fill the legislative void. Similarly, we decline to accept it in the context of filling the void created by the absence of a survival provision. We are supported in this result by Spiller v. Thomas M. Lowe, Jr. & Associates, Inc., 466 F.2d 903 (8th Cir. 1972): The absence of a survival provision from DOHSA did not prevent the Eighth Circuit Court of Appeals from recognizing a federal survival provision rooted in general maritime law. *Id.* at 909–911. Consequently, we affirm the award of damages for pain and suffering.[6]

### III

■■ We turn now to the issue of funeral expenses.[7] A number of recent cases applying the *Moragne* doctrine have allowed awards of funeral expenses in wrongful death actions. The most recent and important case to do so is *Sea-Land Services, supra.* In that case the United States Supreme Court, in a 5–4 decision, held that a longshoreman's wife could bring a *Moragne* wrongful death action even though her husband had recovered damages for his injuries in his lifetime. Justice Brennan's opinion for the Court made these observations about funeral expenses as an item of damages:

"[D]amages for funeral expenses may be awarded under the maritime wrongful death remedy in circumstances where the decedent's dependents have either paid for the funeral or are liable for its payment. A majority of States provided for such recovery under their wrongful death statutes. Furthermore, although there is a conflict over whether funeral expenses are compensable under the Death on the High Seas Act, compare The Culberson, 61 F.2d 194 (CA3 1932), with Moore v. The O. S. Fram, 226 F.Supp. 816, aff'd, 328 F.2d 868 (CA5 1963), it is clear that funeral expenses were permitted under the general maritime law prior to The Harrisburg, see *e. g.,* Hollyday v. The David Reeves, 12 F.Cas. 386 (No. 6,625) (D.C.Md.1879). We therefore find no persuasive reason for not following the earlier admiralty rule and thus hold that funeral expenses are compensable."

414 U.S. at 591, 94 S.Ct. at 818 (footnotes omitted). *Sea-Land Services* and the other five cases [8] that have allowed

---

6. We believe the dictum in Cortes v. Baltimore Insular Line, Inc., 287 U.S. 367, 53 S. Ct. 173, 77 L.Ed. 368 (1932), that the maritime law does not provide for survival of personal rights of action in tort is no longer good law after *Moragne.*

7. The issue of funeral expenses was not separately treated in the brief of either party in this court. The issue, as raised in the briefs, was "Whether damages for conscious suffering and for funeral expenses can be awarded under the Death on the High Seas Act or under general maritime law." The discussion of this quoted question was devoted solely to the pain and suffering aspect. We infer that the parties thought that however the pain and suffering issue was disposed of, the funeral expenses issue would be decided similarly. Though we disagree with this assumption, we regard the award of damages for funeral expenses as properly before us for review.

8. Greene v. Vantage S.S. Corp., *supra*; Dennis v. Central Gulf S.S. Corp., *supra*; Nye v. A/S D/S Svendborg, *supra*; Mascuilli v. United States, 343 F.Supp. 439 (E.D.Pa.

recovery for funeral expenses, including the two cases cited by the district court,[9] were all cases where the accident giving rise to the suit occurred in state territorial waters, with one exception. In that single exception, the court assumed without discussion that *Moragne* applied, even though the accident occurred on the high seas. Nye v. A/S D/S Svendborg, 358 F.Supp. 145 (S.D. N.Y.1973). Since DOHSA clearly provides a cause of action for wrongful death in this case, we fail to see how *Moragne* applies. We hold that the measure of damages for wrongful death provided by DOHSA, namely, "pecuniary loss," controls in the instant case. The Supreme Court in *Moragne* stated that the recognition of a maritime wrongful death action would not "require the fashioning of a whole new body of federal law, but merely removes a bar to access to the existing general maritime law." 398 U.S. at 405–406, 90 S.Ct. at 1790. Yet there is a substantial difference between removing a decisional bar like The Harrisburg and circumventing a statutory mandate like DOHSA. We believe that to cast aside DOHSA in favor of the *Moragne* cause of action would be to engage in a *"tabula rasa* restructuring of the law of admiralty," Sea-Land Services, Inc., *supra*, 414 U.S. at 596, 94 S.Ct. at 806, 820 (dissenting opinion), of the sort *Moragne* counseled against.[10]

It does not undermine our holding to argue that if the Supreme Court had intended pecuniary loss to be the sole measure of damages in maritime wrongful death actions, it would have restricted the courts to federal statutes, and not have allowed reliance on state wrongful death acts in devising the measure of damages under *Moragne*. Even if this argument is persuasive within the compass of *Moragne* actions,[11] we do not find it persuasive in this case. Nor is it relevant that the general maritime law prior to The Harrisburg, *e. g.*, Hollyday v. The David Reeves, 12 F.Cas. 386 (No. 6,625) (D.C.Md.1879), permitted recovery for funeral expenses. We are only free to revive that part of the general maritime law if we are free to ignore DOHSA. Once Congress passed that statute, recovery for funeral expenses was no longer possible if DOHSA provided a measure of damages for wrongful death which excluded funeral expenses from coverage.

The Supreme Court in *Sea-Land* intimates that the meaning of "pecuniary loss" may be broad enough to include funeral expenses. The only case which our research has disclosed where funeral expenses were allowed under DOHSA is Moore v. The O. S. Fram, 226 F.Supp. 816 (S.D.Tex.1963), aff'd sub nom. Wilhelm Seafoods, Inc. v. Moore, 328 F.2d 868 (5th Cir. 1964). The district court did not discuss the legal basis for the award, and the short per curiam opinion of the court of appeals did not even mention the award of funeral expenses.

1972), rev'd on other grounds, 483 F.2d 81 (3d Cir. 1973) ; In re Farrell Lines, Inc., *supra*.

9. Greene v. Vantage S.S. Corp., *supra*; Dennis v. Central Gulf S.S. Corp., *supra*.

10. Section 7 of DOHSA, 46 U.S.C. § 767 (1970), provides that "[t]he provisions of any State statute giving or regulating rights of action or remedies for death shall not be affected by this chapter." It would be possible to interpret this section to allow a state wrongful death statute to operate where the death occurs on the high seas, but the better authority rejects this view, Jennings v. Goodyear Aircraft Corp., 227 F. Supp. 246 (D.Del.1964) ; Petition of Gulf Oil Corp., 172 F.Supp. 911, 916, 917 n. 29 (S.

D.N.Y.1959) ; Wilson v. Transocean Airlines, 121 F.Supp. 85 (N.D.Cal.1954) (reviewing legislative history). This theory also presents anew the problem of divining whether the state wrongful death statute was meant to operate in the area of torts on the high seas. Perhaps most objectionable of all is that this theory, by once again relying on state law to secure admiralty remedies, takes a step backward—in the opposite direction from that counseled by *Moragne*.

11. Even in that arena the argument seems to assume that the Supreme Court actually answered the questions it explicitly stated it did not need to determine. *See* 398 U.S. at 408, 90 S.Ct. 1772.

Furthermore, the Fifth Circuit Court of Appeals distinguished and sharply limited *Moore* in Cities Service Oil Co. v. Launey, 403 F.2d 537, 540 (5th Cir. 1968) (disallowing funeral expenses under Jones Act): "The trial judge [in *Moore*] apparently based his decision on the assumption that under Texas law the wife became legally obligated for the funeral expenses. Without expressing an opinion as to Texas law on this point, it appears clear that in Louisiana the estate, and not the surviving widow, is liable for funeral expenses." [12]

■ Arrayed against the single reported district court case allowing funeral expenses are a number of cases: Cities Service Oil Co. v. Launey, *supra* (Jones Act and by implication DOHSA); The Culberson, 61 F.2d 194 (3d Cir. 1932); First National Bank v. National Airlines, Inc., 171 F.Supp. 528 (S.D.N.Y.1958), aff'd, 288 F.2d 621 (2d Cir. 1961). These cases rest on the rationale that since the estate would be liable for funeral expenses had death occurred naturally, such expenses unlike lost earnings do not represent a pecuniary loss resulting from the tortious conduct and their recovery would represent a windfall. Should our holding be thought to create an anomalous gap in the scope of recovery, since *Sea-Land* allows funeral expenses for deaths wrongfully caused within state waters, we note that the same gap apparently exists under FELA, which has been construed not to allow recovery for funeral expenses, *see, e. g.*, Heffner v. Pennsylvania R. R., 81 F.2d 28, 31 (2d Cir. 1936), although it completely preempts state wrongful death statutes under which funeral expenses might well be compensable, *see* New York Central & H. R. R. R. v. Tonsellito, 244 U.S. 360, 37 S.Ct. 620, 61 L.Ed. 1194 (1917). *But see* Hoffman v. Reading Co., 12 F.Supp. 1010 (D.N.J.

1935). We do not believe it is open to us at this late date to interpret "pecuniary loss" in DOHSA to include funeral expenses, particularly when such a decision would affect laws other than DOHSA, e. g., FELA and the Jones Act. *See* Cities Service Oil Co. v. Launey, *supra*, 403 F.2d at 540.

The award of the district court is modified to reduce the damages from $16,500 to $15,000 plus interest, and is affirmed as modified. Costs are awarded to the plaintiff.

---

12. This distinction provides no help for plaintiff here. Under Massachusetts law the estate of the decedent is primarily liable for the decedent's funeral expenses. *See* Magrath v. Sheehan, 296 Mass. 263, 5 N.E.2d 547 (1936); Constantinides v. Walsh, 146

Mass. 281, 15 N.E. 631 (1888). Since we have sustained the award for pain and suffering, it is clear that Miss Barbe has an estate from which funeral expenses can be recovered.