27 F.3d 426
 1994 A.M.C. 2587
 Robert DAVIS Sr., Personal Representative of the Estate of
Robert Davis Jr.; Janice Schneider, Personal Representative
of the Estate of Matthew Schneider; and John Bauer,
Personal Representative of the Estate of John Dieterich,
Plaintiffs-Appellants,
v.
BENDER SHIPBUILDING AND REPAIR CO., INC., Defendant-Appellee.
 No. 92-36826.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Jan. 31, 1994.
Decided June 21, 1994.
 
 James M. Beard, and John G. Cooper, Stafford, Frey, Cooper & Stewart, Seattle, WA, for plaintiffs-appellants.
 Brian P. McCarthy, Hand, Arendall, Bedsole, Greaves & Johnston, Mobile, AL, and Arden E. Page, Burr, Pease & Kurtz, Anchorage, AK, for defendant-appellee.
 Appeal from the United States District Court for the District of Alaska, James K. Singleton, District Judge, Presiding.
 Before: GOODWIN, SCHROEDER and NORRIS, Circuit Judges.
 SCHROEDER, Circuit Judge:
 
 
 1
 This is an appeal by the estates of seamen who drowned in the Bering Sea after becoming trapped in the hull of a sinking vessel. The estates seek to recover damages for lost future earnings from the ship's builder, Appellee Bender Shipbuilding, under federal general maritime law.
 
 
 2
 In Evich v. Connelly, 759 F.2d 1432 (9th Cir.1985) (Evich I ), we held that the non-dependant survivors of a deceased seaman could pursue a general maritime survival action against the owner of the seaman's vessel. Following our remand to the trial court in Evich I, we held that lost future earnings is a permissible measure of damages in some general maritime survival actions. Evich v. Morris, 819 F.2d 256 (9th Cir.), cert. denied, 484 U.S. 914, 108 S.Ct. 261, 98 L.Ed.2d 218 (1987) (Evich II ). We now hold that our decision in Evich II, insofar as it bears on the case now before us, is no longer controlling authority because it has been partially overruled by Miles v. Apex Marine Corp., 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990).
 
 I.
 
 3
 The tragic facts of this case are straightforward and undisputed. On March 23, 1990, nine crewmen died after becoming trapped in the hull of the vessel ALEUTIAN ENTERPRISE as it sank in the Bering Sea. The estates of the deceased crewmen brought claims against the owners of the vessel and the employer of the crewmen in federal district court in the Western District of Washington. These claims were settled. Thereafter, the estates of three of the crewmen ("the estates") brought this suit against Bender, the shipbuilder, alleging that Bender's negligence in designing and constructing the vessel caused the death of the crewmen.
 
 
 4
 The three crewmen died without dependent heirs. Because estates may not pursue wrongful death claims for loss of support or for other personal injuries that could be recovered by heirs, the estates seek to pursue a survival action for the lost future income the crewmen would have received but for Bender's alleged negligence. The estates do not rest their survival claim on any statutory basis. Instead, they invoke the general maritime law. The district court granted Bender's motion to dismiss, finding that the estates' claims were foreclosed by the Supreme Court's decision in Miles v. Apex, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990). The estates appeal.
 
 II.
 
 5
 Recovery for maritime deaths is governed by a patchwork of state law and both federal statutory law and common law. In the early twentieth century, the legislatures of most of the states rejected the common law proscription of wrongful death actions, enacting wrongful death statutes. See Miles, 498 U.S. at 23, 111 S.Ct. at 320-21. Similarly, in 1920, Congress enacted two maritime wrongful death statutes; the Jones Act, codified at 46 U.S.C.App. Sec. 688 (1988), and the Death on the High Seas Act (DOHSA), codified at 46 U.S.C.App. Secs. 761-67 (1988).
 
 
 6
 The Jones Act creates a cause of action for the wrongful death of seamen. Liability under the Jones Act is determined in accordance with the statutes governing injuries to railroad employees. 46 U.S.C.App. Sec. 688(a); Evich I, 759 F.2d at 1433. Jones Act claims may be pursued by surviving spouses, children or dependent next of kin, 45 U.S.C. Sec. 51 (incorporated through 46 U.S.C.App. Sec. 688(a)); Evich I, 759 F.2d at 1433, and the only proper defendant in a Jones Act action is the seaman's employer. See, e.g., The Norland, 101 F.2d 967, 971 (9th Cir.1939). Negligence is the only basis for liability under the Jones Act.
 
 
 7
 DOHSA also creates a wrongful death cause of action for maritime deaths. Unlike Jones Act claims, DOHSA claims may be brought by dependent heirs on behalf of anyone who has died at sea, not just seamen. See Miles, 498 U.S. at 24, 111 S.Ct. at 321. In addition, DOHSA claims may be pursued against defendants other than employers. See 46 U.S.C.App. Sec. 761. DOHSA, however, provides a remedy only for death on the high seas, not for death in state territorial waters, the waters within one marine league from shore. Id.[1]
 
 
 8
 For several years, DOHSA and the Jones Act effectively complemented state wrongful death statutes, ensuring some measure of recovery for almost all wrongful maritime deaths. The Jones Act provided for recovery for the death of seamen, whether killed in state waters or on the high seas. Designated heirs of deceased longshoremen and other civilians could bring suit either under DOHSA or under a state wrongful death statute, depending on whether death occurred on the high seas or in state waters. Miles, 498 U.S. at 24-25, 111 S.Ct. at 321-22. Anomalies developed, however, as federal courts began to recognize "unseaworthiness" as a basis for recovery in DOHSA actions. Id. at 25-26, 111 S.Ct. at 321-22 (discussing Mahnich v. Southern S.S. Co., 321 U.S. 96, 64 S.Ct. 455, 88 L.Ed. 561 (1944) and Seas Shipping Co. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946)). In an unseaworthiness claim, the owner of a vessel is held strictly liable for failing to provide a safe ship. No showing of negligence, or any fault at all, is required. Id. 498 U.S. at 25, 111 S.Ct. at 321-22. As a consequence of the attractiveness of no-fault liability, "unseaworthiness became the principal vehicle for recovery" for maritime deaths. Id. at 25-26, 111 S.Ct. at 321-22 (citing Moragne v. States Marine Lines, Inc., 398 U.S. 375, 399, 90 S.Ct. 1772, 1787, 26 L.Ed.2d 339 (1970)). But because DOHSA does not apply to deaths in territorial waters, unseaworthiness claims were available only when the death occurred on the high seas or the territorial waters of one of the minority of states recognizing such a remedy. See id. 498 U.S. at 26-27, 111 S.Ct. at 322-23. In most states, recovery for deaths in territorial waters required a showing of negligence.
 
 
 9
 This was the problem facing the plaintiff in Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970). The decedent in Moragne was a longshoreman killed while on board a vessel docked in Florida state waters. The plaintiff, decedent's widow, sought to pursue an unseaworthiness claim but was unable to do so. Florida, like most states at the time, did not recognize unseaworthiness claims under its wrongful death statute, and DOHSA did not apply because the longshoreman had perished in state waters. Overruling The Harrisburg, 119 U.S. 199, 7 S.Ct. 140, 30 L.Ed. 358 (1886), the Supreme Court recognized a general maritime unseaworthiness claim. The Court reasoned that there was no longer a valid basis for The Harrisburg 's rejection of general maritime wrongful death claims in light of the universal acceptance of wrongful death by state legislatures and by Congress. Moragne, 398 U.S. at 388-98, 90 S.Ct. at 1781-82.
 
 
 10
 Of critical importance to the Court in Moragne was a need for uniformity. The Court rejected the notion that DOHSA's application only to death on the high seas evinced a congressional intent to foreclose federal claims brought on behalf of non-seamen who perished in state waters. The Court found that both DOHSA and the Jones Act represent a manifestation of Congress' intent to create uniformity in admiralty jurisdiction by legislation. Id. at 400-01, 90 S.Ct. at 1787-88. In light of the nonuniformities created by the emergence of unseaworthiness claims, the Court found that Congress' preference for uniformity could only be served by recognizing a general maritime unseaworthiness claim for the death of longshoremen in state waters. Miles, 498 U.S. at 26-27, 111 S.Ct. at 322-23 (discussing Moragne, 398 U.S. at 402, 90 S.Ct. at 1788); Barbe v. Drummond, 507 F.2d 794, 800 (1st Cir.1974). The Court in Moragne also strongly suggested that the "humane and liberal character" of proceedings in admiralty favors a liberal extension of remedies for maritime deaths unless such remedies are expressly foreclosed by Congress. Moragne, 398 U.S. at 386-87, 90 S.Ct. at 1780.
 
 
 11
 In the wake of Moragne, several courts of appeals, including this one, found that Moragne supported recognition of general maritime survival actions in addition to wrongful death claims. E.g., Evich I, 759 F.2d at 1434; Azzopardi v. Ocean Drilling & Exploration Co., 742 F.2d 890 (5th Cir.1984); Barbe, 507 F.2d at 799-800; Spiller v. Thomas M. Lowe, Jr. & Assocs., 466 F.2d 903 (8th Cir.1972). In a survival action, a decedent's estate may recover damages on behalf of the decedent for injuries that the decedent has sustained. In a wrongful death action, by comparison, the decedent's dependents may only pursue claims for personal injuries they have suffered as a result of a wrongful death. Miles v. Melrose, 882 F.2d 976, 985 (5th Cir.1989), aff'd, 498 U.S. 19, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990).
 
 
 12
 Recognition of the general maritime survival action has provided a remedy to decedents' estates, who otherwise might not have had standing under the Jones Act or DOHSA to bring suit, Evich I, 759 F.2d at 1434, and has expanded the scope of damages recoverable for maritime deaths beyond that permitted under the Jones Act or DOHSA, see Evich II, 819 F.2d at 258; Azzopardi, 742 F.2d at 892-94; Barbe, 507 F.2d at 798-800. In Evich II, we held that a claim by a seaman's estate for lost future earnings survived the seaman's death and such damages could be recovered in a general maritime action, at least in a case in which there is no potential for double recovery by wrongful death beneficiaries also seeking loss of support damages. Evich II, 819 F.2d at 258. We reasoned that although most states do not permit recovery for lost future earnings in survival actions, such recovery " 'better becomes the humane and liberal character of proceedings in admiralty,' " id. (quoting Moragne, 398 U.S. at 387, 90 S.Ct. at 1780), and "prevents the anomaly of rewarding a petitioner for killing his victim rather than injuring him," id.
 
 
 13
 However, three years after we decided Evich II, the Supreme Court returned to the subject in Miles. The plaintiff's principal contention in Miles was that Moragne should be interpreted broadly to recognize general maritime survival actions for lost future earnings, as this court had done in Evich I and Evich II. The Court began its analysis by reaffirming Moragne, holding that there exists a general maritime cause of action for the wrongful death of seamen. Miles, 498 U.S. at 27-30, 111 S.Ct. at 323-24. The Court then turned to the issue of the damages available in such an action. The Court expressly declined to decide whether survival actions are foreclosed per se under general maritime law, leaving Evich I intact. Id. at 34, 111 S.Ct. at 326-27. The Court instead decided that even if general maritime survival actions are permissible, lost future earnings cannot be recovered under federal maritime law, if, as was the circumstance in Miles, the plaintiff represents a deceased seaman. Id. at 35-36, 111 S.Ct. at 327-28. The Court reasoned that because Congress has limited the survival right in the Jones Act to injuries sustained during a seaman's lifetime, more expansive remedies may not be recovered on behalf of a seaman under federal general maritime law. The Court bolstered its conclusion by noting that the states, like Congress, were reluctant to recognize survival actions for lost future income. Id. at 35, 111 S.Ct. at 327.
 
 
 14
 We have recently held that survival claims for lost future earnings may be pursued in a case involving the death of a non-seaman in state territorial waters. Sutton v. Earles, 26 F.3d 903 (9th Cir.1994). We said this was appropriate "where there is no applicable federal wrongful death statute imposing a damage limitation." Id., at 920. Our decision in this case, however, is controlled by Miles. The estates' decedents were seamen, and they perished on the high seas. The Jones Act does not permit the damages sought by the estates. DOHSA does not permit such damages either. We are therefore precluded from awarding them to the estates under general maritime law.
 
 
 15
 The plaintiffs attempt to distinguish this case from Miles by stressing that the defendant in this case is the shipbuilder, not a "Jones Act defendant." Yet there is nothing in Miles ' reasoning to suggest that the decision turned upon the identity of the defendant. Indeed, not all of the defendants in Miles were Jones Act employers. Miles, 498 U.S. at 21, 111 S.Ct. at 319-20. Moreover, the principle underlying the Supreme Court's decision in both Miles and Moragne is that general maritime law is intended to supplement the statutory remedies created by Congress, not to enhance or replace them. Miles instructs the lower federal courts that a claim for lost future earnings is not available in connection with a maritime death for which Congress has already provided a remedy and has excluded such damages. The identity of the defendant is irrelevant to these considerations.
 
 
 16
 AFFIRMED.
 
 
 
 [1]
 The heirs of a seaman who has died on the high seas may pursue a claim under DOHSA or the Jones Act. Doyle v. Albatross Tanker Corp., 367 F.2d 465 (2d Cir.1966); see Miles, 498 U.S. at 29, 111 S.Ct. at 324; see also E.L. Kellett, Annotation, Death on the High Seas Act: Right to Recover for Death of Seaman as Affected by Jones Act, 22 A.L.R.3d 852 (1968)