Kimberly S. SAAVEDRA; The Estate of Masakazu Yamaguchi; Makiko Yamaguchi; Chisato Yamaguchi, et al., Plaintiffs–Appellees–Cross–Appellants,

v.

KOREAN AIR LINES COMPANY, LTD. Defendant–Appellant–Cross–Appellee.

Kimberly S. SAAVEDRA, as Special Administratrix of the Estate of Makoto Okai, deceased, and as Personal Representative of Toru Okai and Hitoko Okai, Plaintiff–Appellant–Cross–Appellee,

v.

KOREAN AIR LINES COMPANY, LTD., Defendant–Appellee–Cross–Appellant.

Nos. 94–55018, 94–55060, 94–55161, 94–55495 and 94–55496.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 8, 1996.

Decided Aug. 2, 1996.

Juanita M. Madole, Speiser, Krause, Madole & Cook, Irvine, California, for plaintiffs-appellees-cross-appellants.

Andrew J. Harakas, Tompkins, Harakas, Elsasser & Tompkins, White Plains, New York, for defendant-appellant-cross-appellee.

Before SCHROEDER and LEAVY, Circuit Judges, and TRIMBLE,* District Judge.

SCHROEDER, Circuit Judge:

These two sets of appeals and cross-appeals arise out of the Korean Air Lines ("KAL") disaster of September 1, 1983, when missiles fired from Soviet military aircraft shot down KAL Flight KE007 over the Sea of Japan. The plaintiff, Kimberly Saavedra, is the personal representative for the estates of three crash victims: Makoto and Yoko Okai, who were husband and wife, and Masakazu Yamaguchi. Saavedra filed these actions against KAL in the District Court for the Central District of California, claiming a wide array of damages.

When Saavedra filed suit, KAL's liability to all of the passengers on flight KE007 had already been established in a single trial, conducted in the District Court for the District of Columbia. *See In re Korean Air Lines Disaster of Sept. 1, 1983,* 575 F.Supp. 342, 343 (J.P.M.L.1983)(per curiam). That trial followed from an order of the Judicial Panel on Multidistrict Litigation, which transferred all of the federal cases relating to the KE007 disaster to D.C. for resolution of the common issues. The jury in the consolidated trial found that KAL's "willful misconduct" had caused the death of the passengers, and awarded punitive damages. The Court of Appeals for the District of Columbia then vacated the award of punitive damages, but affirmed the finding of willful misconduct. *See In re Korean Air Lines Disaster of Sept. 1, 1983,* 932 F.2d 1475 (D.C.Cir.), *cert. denied,* 502 U.S. 994, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991). Once the common liability issues were resolved, victims and their surviving relatives pursued actions for compensatory damages in various jurisdictions.

The cases before us were originally assigned to Judge Irving Hill of the Central District of California, who issued pretrial rulings and who went on to preside over the jury trial of the Yamaguchi action. Judge A. Wallace Tashima presided over the jury trial of the Okai actions. In all of the cases, Saavedra proceeded under the Convention for the Unification of Certain Rules Relating to International Transportation by Air, *done* at Warsaw, Oct. 12, 1929, 49 Stat. 3000, T.S. No. 876, *reprinted in* 49 U.S.C.App. § 1502 note ("Warsaw Convention") and the Death on the High Seas Act, §§ 1 *et seq.,* 46 App. U.S.C.A. §§ 761 *et seq.* ("DOHSA"). Because the D.C. Circuit had upheld the jury's

---

* Honorable James T. Trimble, Jr., United States District Judge for the Western District of Louisiana, sitting by designation.

finding of willful misconduct, the $75,000 cap on damages, contained in Article 25 of the Warsaw Convention, was lifted.

In a pretrial ruling that governed all of Saavedra's actions, Judge Hill specified the types of damages that were recoverable under DOHSA and the Warsaw Convention. Under Judge Hill's order, damages for loss of society were disallowed. Judge Tashima did submit instructions to the jury on the issue of loss of society, but in deference to Judge Hill's earlier ruling, did not enter judgment on the jury's finding of $300,000 loss of society damages. The Okai and Yamaguchi juries awarded the following verdicts on the other, permissible damages:

| Kind of Damages | Okai | Yamaguchi |
| --- | --- | --- |
| Loss of Support | $200,000 | $1,813,391 |
| Loss of Past and Future Services & Inheritance | $0 | $115,140 |
| Mental Anguish & Grief of Survivors | $150,000 | $526,000 |
| Funeral & Memorial Expenses | $0 | $16,500 |
| Pre-death Pain & Suffering of Passenger(s) | $1,500,000 | $100,000 |
| * Loss of Society | $300,000 | —— |

Both judges awarded prejudgment interest to Saavedra at the rate of the 52–week Treasury Bill ("T–Bill") as of the last T–Bill auction prior to the judgment.

In both the Okai and Yamaguchi actions, the parties have filed appeals and cross-appeals. Saavedra seeks loss of society damages and a higher award of prejudgment interest, while KAL challenges the amount of damages awarded. Many of the issues raised before this court were resolved for the first time in a recent, related Supreme Court case, *Zicherman v. Korean Air Lines Co., Ltd.*, —— U.S. ——, 116 S.Ct. 629, 133 L.Ed.2d 596 (1996), an action for damages brought in the Southern District of New York on behalf of another KE007 crash victim. The Supreme Court in *Zicherman* in-

validated an award for loss of society, holding that the DOHSA does not authorize nonpecuniary damages. *Id.* at ——, 116 S.Ct. at 637. In light of *Zicherman*, we asked for supplemental briefing.

The parties now agree that the district courts' judgments correctly denied Saavedra any recovery for loss of society, and Saavedra's appeals in the Okai cases and cross-appeals in the Yamaguchi case are abandoned to the extent they sought such damages.

KAL further contends that the other district court awards of nonpecuniary damages, which include damages for survivor's grief and the pre-death pain and suffering of the decedents, are invalid in light of *Zicherman*. In the alternative, KAL challenges the sufficiency of the evidence supporting the award of pre-death pain and suffering, as well as the amount of those damages in the Okai cases. Saavedra defends these damages, arguing that they are supported by Korean law and thus are redressable under DOHSA § 4, 46 U.S.C. § 764 ("rights of actions given by laws of foreign countries"), even if nonpecuniary damages are not otherwise available under DOHSA after *Zicherman*. Saavedra also argues that pre-death pain and suffering damages are available as part of a general maritime survival action. Accordingly, we must first determine the effect of the *Zicherman* decision on the district courts' awards of nonpecuniary damages in these cases.

We also must consider the other damage issues. The first is KAL's sufficiency of the evidence challenge to the loss of support damages in the Okai cases. The other is Saavedra's contention that the district court abused its discretion in awarding prejudgment interest at the 52–week T–Bill rate in effect as of the last T–Bill auction prior to judgment, rather than at the higher rate in effect at the last T–Bill auction prior to the KE007 disaster.

We hold that the Supreme Court's reasoning in *Zicherman*, although directly dealing only with a claim for loss of society, effectively forecloses any claims under American law for nonpecuniary damages, including com-

* Not actually entered.

pensation for the grief of the survivors, and the pre-death pain and suffering of the victims. We do not reach the question of whether claims for damages might also be made under foreign law pursuant to § 4 of DOHSA, 46 U.S.C. § 764, because Saavedra elected to proceed directly under the Warsaw Convention on the theory that the Convention authorizes claims broader than those allowed under DOHSA. Saavedra neither proffered evidence of Korean law at trial nor sought to have the jury instructed on Korean law.

We hold that Saavedra adduced sufficient evidence to support the award of loss of support in the Okai case. Finally, we hold that, given the alternatives presented to the district court, it did not abuse its discretion in awarding prejudgment interest at the 52–week T–Bill rate as of the last T–Bill auction prior to judgment.

## THE ZICHERMAN LITIGATION

■ The parties agree that the Supreme Court's decision in *Zicherman* forecloses Saavedra's claims for loss of society damages in both cases. Saavedra, like the plaintiffs in *Zicherman,* claimed loss of society damages directly under the Warsaw Convention. The parties disagree, however, on whether *Zicherman* forecloses other claims. To help resolve the disagreement over the proper interpretation of the Supreme Court's opinion, we look to the history of the *Zicherman* litigation.

The district court in *Zicherman,* 807 F.Supp. 1073, 1086–89 (S.D.N.Y.1992), permitted the jury to award loss of society damages, on the ground that such damages were recoverable directly under Article 17 of the Convention, which makes the carrier, here Korean Air Lines, liable for "damage sustained in the event of death or wound of a passenger ..." 49 Stat. 3018. In the district court's view, "damage sustained" referred to "actual harm experienced," 807 F.Supp. at 1087 (quoting *In re Korean Air Lines Disaster,* 932 F.2d at 1485), so that when a passenger died, actual harm experienced would include "monetary or other loss to the survivors," such as loss of society damages. *Id.* The district court rejected the notion that

DOHSA limits the recovery available directly under the Convention, concluding that to the extent a conflict exists, the Convention, which is more recent, governs. *Id.*

On direct appeal, the Second Circuit agreed that loss of society damages are available under the Warsaw Convention, but not on the same ground as the district court. The Second Circuit explained that "damages under the convention should be determined 'by general maritime law.' " *Zicherman v. Korean Air Lines Co., Ltd.,* 43 F.3d 18, 21 (quoting *In re Air Disaster at Lockerbie Scotland on Dec. 21, 1988,* 37 F.3d 804, 828 (2nd Cir.1994)). The Second Circuit then concluded that general maritime law allows recovery for loss of society. *Id.*

The Supreme Court reversed. *Zicherman,* —— U.S. ——, 116 S.Ct. 629, 133 L.Ed.2d 596. First, the Court rejected the district court's theory that damages are recoverable directly under the Warsaw Convention. The Court explained that "damage" in Article 17 refers to "legally cognizable harm," and that adjudicating courts are to determine what harm is legally cognizable only by referring to domestic law. —— U.S. at ——, 116 S.Ct. at 634. In *Zicherman,* the parties agreed that the governing domestic law was the United States'.

The Court then rejected the Second Circuit's holding that general maritime law is the proper domestic law to consider. The Court explained that Article 17 is merely a pass through provision that does not permit federal courts "to develop a common law rule—under the cover of general admiralty law or otherwise—that will supersede the normal federal disposition." *Id.* at ——, 116 S.Ct. at 636. Thus, federal courts are authorized only "to apply the law that would govern in the absence of the Warsaw Convention." *Id.* In cases of wrongful death on the high seas, that law is DOHSA. *Id.* Since DOHSA permits only pecuniary damages, loss of society damages are unavailable. *Id.;* 46 U.S.C.App. § 762.

Because the rule in *Zicherman* was applied to the parties in that case, we must give the rule retroactive effect in this case, which was pending when *Zicherman* was decided.

*See James B. Beam Distilling Co. v. Georgia*, 501 U.S. 529, 540, 111 S.Ct. 2439, 2446, 115 L:Ed.2d 481 (1991)(holding that "it is error to refuse to apply a rule of federal law retroactively after the case announcing the rule has already done so"); *Melton v. Moore*, 964 F.2d 880 (9th Cir.1992). The district court judgments, insofar as they deny damages for loss of society, must be affirmed.

## SURVIVOR'S GRIEF

▆ The district court allowed the jury to award damages in each case for survivor's grief, on the ground that such damages are available directly under the Warsaw Convention. In light of *Zicherman*, the district court's theory is no longer tenable. — U.S. at ——, 116 S.Ct. at 634. As the Supreme Court explained, no cause of action directly under the Warsaw Convention exists; the Convention merely provides "pass through" provisions, which allow the courts to use only domestic causes of action. *Id.* at ——, 116 S.Ct. at 636. Saavedra is therefore limited to the remedies provided in DOHSA. *Id.* Because DOHSA creates only a cause of action for pecuniary damages suffered by the estate, and the survivor's grief is a nonpecuniary damage, we must hold that the district court erred in permitting Saavedra to proceed on that claim and in awarding judgment upon it.

Saavedra alternatively argues on appeal that although DOHSA generally bars nonpecuniary damages, such damages are available under § 4 of DOHSA, which Saavedra contends allows recovery in this case for damages available under Korean law. Section 4, entitled "Rights of action given by laws of foreign countries" provides:

> Whenever a right of action is granted by the law of any foreign State on account of death by wrongful act, neglect, or default occurring upon the high seas, such right may be maintained in an appropriate action in admiralty in the courts of the United States without abatement in respect to the amount for which recovery is authorized, any statute of the United States to the contrary notwithstanding.

46 U.S.C. § 764.

Defendants argue that § 4 is essentially a choice of law provision that does not permit a plaintiff to pick and choose among United States and foreign law. Several courts have so interpreted § 4. *See, e.g., Bergeron v. Koninklijke Luchtvaart Maatschappij, N.V.*, 188 F.Supp. 594 (S.D.N.Y.1960), *appeal dismissed*, 299 F.2d 78 (2d Cir.1962); *In re Korean Air Lines Disaster of Sept. 1, 1983*, 814 F.Supp. 592, 599 (E.D.Mich.1993); *In re Air Crash Disaster Near Bombay, India on Jan. 1, 1978*, 531 F.Supp. 1175, 1185–86 (W.D.Wash.1982). On the other hand, there are several district court cases permitting claims under foreign law in addition to claims brought under United States statutes. *See, e.g., Powers v. Cunard S.S. Co.*, 32 F.2d 720 (S.D.N.Y.1925); *Noel v. Linea Aeropostal Venezolana*, 260 F.Supp. 1002 (S.D.N.Y. 1966); *Heath v. American Sail Training Association*, 644 F.Supp. 1459, 1467 (D.R.I. 1986).

▆ The Supreme Court's decision in *Zicherman* does not address this issue, for the parties in that case agreed that only United States law applied. — U.S. at ——, 116 S.Ct. at 635. We also need not address the issue, as Saavedra failed to properly preserve it. Initially, Judge Hill, in his Order Declaring Applicable Law, held that survivor's grief damages were available pursuant to the Korean law theory that Saavedra now urges. Saavedra, however, had a change of heart and moved the district court to delete any reference to Korean law, and to hold instead that survivor's grief damages were available directly under the Warsaw Convention. Judge Hill granted Saavedra's motion. Thus, no evidence of Korean law was adduced at trial, and the question of survivor's grief damages under a Korean law theory was never put to the jury. Given these facts, we hold that Saavedra failed to preserve this theory in the district court, and it is hence unavailable to her on appeal. *See Moran v. Aetna Life Insurance Co.*, 872 F.2d 296, 300 (9th Cir.1989)(plaintiff may not assert an alternate theory for defendant's liability for the first time on appeal).

## PRE–DEATH PAIN AND SUFFERING

At trial Saavedra introduced evidence to establish that the KE007 victims survived for

eleven to twelve minutes after the Soviet missile(s) hit the plane. Saavedra also provided dramatic expert opinions describing how the victims probably suffered, both mentally, because they were cognizant of their impending deaths, and physically, because altitude decompression causes the gases trapped inside the body to try to escape.

■ The district court held that Saavedra was "entitled to assert a survival claim for decedents' pre-death pain and suffering, based [directly] on Article 17 of the Warsaw Convention." But, just as survivor's grief and loss of society damages are unavailable directly under the Convention, the same is true for pain and suffering. The Convention simply does not create a substantive cause of action, and the contrary view, adopted by the District Court in *Zicherman* as well as the district court here, has been squarely rejected. —— U.S. at ——, 116 S.Ct. at 631. Saavedra must turn to DOHSA, but that statute simply will not brook pain and suffering relief. First, pain and suffering is nonpecuniary and DOHSA allows recovery only for pecuniary harm. 46 U.S.C. § 762. Second, DOHSA authorizes a wrongful death action on behalf of the decedents' immediate family and dependent relatives, 46 U.S.C. § 761; whereas pre-death pain and suffering damages are generally brought as part of a survival action on behalf of the decedent. *See generally, Evich v. Morris,* 819 F.2d 256, 258 (9th Cir.)("*Evich II* ")(pre-death pain and suffering generally recoverable as part of survival action), *cert. denied,* 484 U.S. 914, 108 S.Ct. 261, 98 L.Ed.2d 218 (1987), *implied overruling in part recognized by, Davis v. Bender Shipbuilding and Repair Co., Inc.,* 27 F.3d 426, 430 (9th Cir.1994).

■ Saavedra, recognizing that these damages are not ordinarily available under the Warsaw Convention and DOHSA, attempts to defend the award on two grounds. The first is the same as that asserted with respect to survivor's grief, namely that a claim for such damages is recognized under Korean law. The record indicates, however, that Saavedra never advanced this Korean law theory in support of pre-death pain and suffering damages to the district court. Further, Saavedra never adduced evidence at trial of what these damages would be under Korean law, and never put the question to the jury. Because the record with respect to pre-death pain and suffering is materially the same as that with respect to survivor's grief, Saavedra's Korean law argument must be rejected for the same reasons. *Moran,* 872 F.2d at 300.

■ Second, Saavedra contends that a decedent's estate can bring a survival claim for pre-death pain and suffering under general maritime law, even though that cause of action is unavailable under DOHSA. Saavedra points out that in *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 402, 90 S.Ct. 1772, 1788, 26 L.Ed.2d 339 (1970), the Supreme Court held that DOHSA may be supplemented by general maritime law. "The Death on the High Seas Act was not intended to preclude the availability of a remedy for wrongful death under general maritime law in situations not covered by the Act." *Id.* at 402, 90 S.Ct. at 1788. *Moragne* arose out of the death of a longshoreman on a ship. The Court allowed the longshoreman's widow to bring a general maritime wrongful death action, asserting the unseaworthiness of the vessel, despite the fact that DOHSA did not cover the decedent's particular situation.

This court held, following *Moragne,* that DOHSA may be supplemented with a survival action under general maritime law, *Evich v. Connelly,* 759 F.2d 1432, 1434 (9th Cir. 1985)("*Evich I* "), and we noted that such survival actions have generally allowed compensation for pre-death pain and suffering. *Evich II,* 819 F.2d at 256. We also said that the decedent's future earnings were compensable in such an action. *Id.* Saavedra relies on these cases.

If *Evich I* and *Evich II* were the only relevant precedents, Saavedra's argument for pre-death pain and suffering damages would be persuasive; however, several subsequent Supreme Court decisions, culminating with *Zicherman,* undoubtedly preclude such relief. The first is *Mobil Oil Corp. v. Higginbotham,* 436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978), where the Court held that because DOHSA bars nonpecuniary damages, DOHSA may not be supplemented

with a general maritime wrongful death action for nonpecuniary damages, specifically loss of society damages. The Court explained that "when [Congress] does speak directly to a question, the courts are not free to 'supplement' Congress' answer so thoroughly that the Act becomes meaningless." *Id.* at 625, 98 S.Ct. at 2015. The Court applied similar logic in *Miles v. Apex Marine Corp.*, 498 U.S. 19, 34–36, 111 S.Ct. 317, 326–328, 112 L.Ed.2d 275 (1990), holding that since the survival action created by the Jones Act bars recovery for loss of future earnings, a supplemental survival action under general maritime law, allowing recovery for loss of future earnings, is impermissible. *Miles* therefore overruled *Evich II*, insofar as *Evich II* allowed a general maritime survival action for loss of future earnings. *Davis*, 27 F.3d at 430. Finally, in *Zicherman*, the Court rejected the view, adopted by the Second Circuit, that general maritime law ordinarily governs domestic actions brought under the Warsaw Convention, stressing that the Warsaw Convention does not "empower [the courts] to develop some common law rule—under general admiralty law or otherwise—that will supersede the normal federal disposition."

We are therefore compelled to hold that because DOHSA does not allow recovery for nonpecuniary damages, we cannot 'supplement' Congress' remedy, allowing a general maritime survival action for nonpecuniary damages, including the pre-death pain and suffering claimed here. Saavedra notes that the Court in *Zicherman* specifically left open the question of whether an award of pain and suffering damages was permissible; however, the Court declined to address pain and suffering only because that award was not challenged on petition for certiorari. —— U.S. at —— n. 4, 116 S.Ct. at 636 n. 4. The Supreme Court, in holding that DOHSA cannot be supplemented by general maritime law in order to obtain loss of society damages, gave no indication that there was any material difference between loss of society damages and any other nonpecuniary damages, all of which DOHSA expressly disallows. Nor can we find any basis for such a distinction. The Sixth Circuit addressed this very issue in *Bickel v. Korean Air Lines Co.,*

*Ltd.*, 83 F.3d 127, 132 (6th Cir.1996), and came to the same conclusion:

> As to the recoverability of survivor's grief damages under DOHSA, we note that the Supreme Court did not directly address this issue. We cannot, however, perceive any distinction of which the *Zicherman* Court would have approved that would permit us to conclude that the recovery of one sort of non-pecuniary damages, such as loss of society, is precluded by DOHSA, whereas other sorts of non-pecuniary damages, such as survivor's grief, are not.

We agree with the Sixth Circuit and decline Saavedra's invitation to circumvent Congressional wisdom by allowing damages that DOHSA precludes.

## LOSS OF SUPPORT

■ In the Okai appeal, KAL contends that the district court erred by failing to set aside the loss of support damages awarded to the Okais' parents. This court will not disturb a jury verdict supported by substantial evidence. *Davis v. Mason County*, 927 F.2d 1473, 1486 (9th Cir.), *cert. denied*, 502 U.S. 899, 112 S.Ct. 275, 116 L.Ed.2d 227 (1991).

■ KAL first contends that Saavedra adduced no evidence that the Okais' parents had a reasonable expectation of future financial support. *See Bergen v. F/V St. Patrick*, 816 F.2d 1345, 1350 (9th Cir.1987)("recovery for loss of support requires some showing of dependence on the deceased or an expectation of support"), *cert. denied*, 493 U.S. 871, 110 S.Ct. 200, 107 L.Ed.2d 154 (1989). This contention lacks merit. Makoto Okai's father and Yoko Okai's mother both testified that as they aged, they would expect support from their children. Moreover, Saavedra solicited testimony from a cultural anthropologist, who agreed that in Japanese culture, the Okais' parents could reasonably expect support from the Okais.

KAL also takes issue with the manner in which Saavedra's expert economist calculated the Okais' future earnings. Specifically, the economist calculated Makoto Okai's future earnings from statistics for college graduates, since no statistics for Makoto Okai's actual profession—jazz musician in Japan—

were available. The economist also admitted that he did not take the Okais' personal consumption into account when calculating future earnings. These perceived weaknesses do not render the economist's testimony meaningless. The arguments KAL now makes were presented to the jury, and we are not permitted to weigh the evidence again, or to substitute our own judgment for the jury's. *Oviatt By and Through Waugh v. Pearce,* 954 F.2d 1470, 1473 (9th Cir.1992). On this record, substantial evidence supports the jury award.

### INTEREST

 Saavedra argues that the district court erred by setting prejudgment interest at the 52-week T-Bill rate in effect just before judgment, rather than at the higher rate available right before the KE007 disaster. We review a district court's decision to assess prejudgment interest rates for abuse of discretion. *Vance v. American Hawaii Cruises, Inc.,* 789 F.2d 790 (9th Cir.1986).

Saavedra contends, correctly, that prejudgment interest is a compensatory measure. *Western Pac. Fisheries, Inc. v. S.S. President Grant,* 730 F.2d 1280, 1288–89 (9th Cir.1984). Saavedra is incorrect, however, that the district court was required to choose the higher interest rate at the date of the crash in order to achieve adequate compensation. The most accurate way to fully compensate a plaintiff would be to award prejudgment interest from the date of injury, but at a fluctuating rate. *See generally, MHC, Inc. v. Oregon Dep't of Revenue,* 66 F.3d 1082, 1090–91, n. 10, n. 11 (applying fluctuating T-Bill rate, calculated daily from date obligation was due). None of the parties presented this option to the district court. Instead, Saavedra argued for T-Bill rate just before the time of injury, while KAL argued for the T-Bill rate just before the time of judgment. We find that the district court, presented with these choices, did not abuse its discretion.

Indeed, the district court's decision is consistent with 28 U.S.C. § 1961(a), which states that post-judgment interest should be set at the T-Bill rate "settled immediately prior to the date of judgment." Although this section governs post-judgment interest, this court has applied its presumption in favor of using T-Bill rates in the context of prejudgment interest. *See, e.g., In re Nucorp Energy, Inc.,* 902 F.2d 729, 734 (9th Cir.1990). As we have previously used § 1961(a) as a yardstick for prejudgment interest, we would be remiss to hold that the district court abused its discretion in following the dictates of § 1961(a).

### CONCLUSION

We therefore VACATE the award of damages for survivor's grief and pre-death pain and suffering of the passengers. We AFFIRM the award of loss of support damages, the district court's refusal to grant loss of society damages, and the district court's order awarding prejudgment interest at the T-Bill rate just prior to judgment.